# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CT-01564-SCT

*GIGI KILHULLEN*

*v.*

*KANSAS CITY SOUTHERN RAILWAY AND*
*ROBERT W. LAY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2006 |
| TRIAL JUDGE: | HON. VERNON R. COTTEN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KENNETH MARTIN HEARD, III |
| | BARRY W. GILMER |
| | REID STUART BRUCE |
| ATTORNEYS FOR APPELLEES: | CHARLES EDWIN ROSS |
| | WILLIAM B. LOVETT |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 02/26/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Following a fatal collision at a railroad crossing between the tractor-trailer driven by Thomas D. Kilhullen ("Thomas") and a train owned by Kansas City Southern Railway Company ("Kansas City Southern"), Thomas's widow, Gigi Kilhullen ("Kilhullen"), filed a wrongful-death suit against Kansas City Southern and the train's engineer, Robert W. Lay, in the Circuit Court of Scott County, Mississippi. Thereafter, Kansas City Southern and Lay moved for summary judgment, which was granted by the circuit court. The Mississippi

Court of Appeals affirmed. *See **Kilhullen v. Kansas City S. Ry.***, 2008 Miss. App. LEXIS 195 at *26 (Miss. Ct. App. April 1, 2008). Kilhullen's subsequent "Petition for Writ of Certiorari" was then granted by this Court.

**FACTS**

¶2. On June 20, 2000, Thomas drove a tractor-trailer loaded with lumber onto the Herring Road railroad crossing in Morton, Mississippi. Thomas subsequently was killed when the truck was struck by a train owned by Kansas City Southern and operated by Lay. On December 4, 2001, Kilhullen filed a wrongful-death suit against Kansas City Southern and Lay. Discovery commenced on May 14, 2002. According to the circuit court, "following discovery . . . the single issue which remain[ed] is the complaint that due to vegetation and other objects which were present near the right-of-way, [Thomas] had limited visibility of a train approaching said crossing, and this sight limitation was the proximate cause of the accident."

¶3. On October 21, 2004, Kansas City Southern and Lay filed a motion for summary judgment. On January 4, 2005, one day prior to hearing, Kilhullen produced affidavits from lay witness Jimmy Shelton and a registered professional engineer, Jimmy Halfacre, in opposition to the motion for summary judgment. Following the hearing, the circuit court entered an order on January 21, 2005, which "put a moratorium on any further discovery in the case, with the exception that [Kansas City Southern and Lay] could depose Halfacre and Shelton . . . . The court also held the motion for summary judgment in abeyance pending a hearing on whether Shelton and Halfacre's affidavits were admissible." ***Kilhullen***, 2008 Miss. App. LEXIS 195 at *4.

2

¶4. On April 20, 2006, Kilhullen filed an affidavit from accident reconstructionist Brett Alexander which agreed with Halfacre's opinion that a clear line of sight, adequate to react to the presence of a train, was not present at the railroad crossing, and that Halfacre utilized the proper methodology in reaching his conclusions. Specifically, Alexander's affidavit provided, in part, that:

> [b]ased upon my training and experience, I agree with the engineering procedures and computations performed by [Halfacre]. I concur in [Halfacre's] opinion and it is my opinion that [Thomas], the operator of the tractor-trailer rig, was not provided a clear line of sight adequate to enable [Thomas] to see the approaching train, react to the presence of the train, and safely pass through the grade crossing.

Thereafter, the circuit court entered an order deeming Alexander's affidavit to be "further discovery, which was disallowed in [the] order of January 21, 2005[,]" and directing Kilhullen to file a motion "for leave to engage in further discovery" pursuant to Mississippi Rule of Civil Procedure 6(b)(2). On June 12, 2006, the circuit court held a subsequent hearing on the motion for summary judgment.

¶5. In its "Opinion and Order," the circuit court deemed the motion for summary judgment and discovery issues to be "inextricably joined or intertwined . . . ." Addressing Halfacre's affidavit, the circuit court stated that, "applying the *Daubert* standard to the case *sub judice* it is clear that accident reconstruction is a specified field in which a witness must be qualified by education and experience specific to the field in order to testify as an expert."[1] The circuit court then found that Halfacre lacked "any specialized knowledge,

---

[1] *See* **Daubert v. Merrill Dow Pharms., Inc.**, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

training or expertise in the field of accident reconstruction[,]" and, therefore, deemed his affidavit inadmissible. Regarding Alexander's affidavit, the circuit court likewise found it inadmissible, determining that it was impermissible "further discovery" and irrelevant under Mississippi Rule of Evidence 402. After striking the affidavits of both Halfacre and Alexander,[2] the circuit court concluded that "[d]ue to the nature of the cause, wherein there were no eyewitnesses and wherein [Kilhullen's] proof was dependent upon accurate reconstruction expert testimony the [c]ourt finds there to be no genuine issue of material fact, and the Motion for Summary Judgment is sustained."

¶6. The Court of Appeals affirmed. *See **Kilhullen**, 2008 Miss. App. LEXIS 195 at *26. Regarding Halfacre's affidavit, the Court of Appeals found that the circuit court did not abuse its discretion in finding it inadmissible because his testimony, "regardless of . . . arguments to the contrary, [was] clearly an attempt at accident reconstruction[,]" and "[w]hile [Halfacre] was an engineer, his education was in electrical engineering and the majority of his experience was in conducting home inspections." *Id*. at *12-13. Given Halfacre's purported lack of experience "in any field relevant to his opinion[,]" the Court of Appeals concluded that:

> [t]his case cannot be disposed of by a simple calculation without taking into account the numerous other factors that had an impact on the accident.[3] While extensive accident reconstruction testimony might not have been

---

[2]The court also struck the affidavit of Shelton. That ruling, however, was not presented in Kilhullen's "Petition for Writ of Certiorari" and, therefore, will not be considered by this Court.

[3]According to the Court of Appeals, these factors included the "vertical line of sight, horizontal line of sight, placement of any lights, and any braking done by the train or Thomas . . . ." *Id*. at *18.

4

required to overcome summary judgment, Kilhullen still must provide testimony regarding line of sight from someone qualified to do so.

*Id*. at \*16, 23.  As to Alexander's affidavit, the Court of Appeals found that the circuit court "correctly ruled . . . as Alexander did not offer any opinion as to Halfacre's qualifications or expertise." *Id*. at \*20.  Accordingly, the Court of Appeals concluded that "[s]ince we have found that Kilhullen's proposed affidavits were properly rejected by the court, we also find that summary judgment was properly entered against Kilhullen." *Id*.  Thereafter, Kilhullen filed her "Petition for Writ of Certiorari," which was granted by this Court.

## ISSUES

¶7.     On petition for writ of certiorari, *see* Mississippi Rule of Appellate Procedure 17, this Court will consider:

> (1) Whether the circuit court abused its discretion in rejecting the affidavit of engineer Jimmy Halfacre.
> (2) Whether the circuit court abused its discretion in rejecting the affidavit of accident reconstructionist Brett Alexander.
> (3) Whether the circuit court erred in granting summary judgment for Kansas City Southern and Lay.

## ANALYSIS

### I.     Whether the circuit court abused its discretion in rejecting the affidavit of engineer Jimmy Halfacre.

¶8.     "[T]he admission of expert testimony is within the sound discretion of the trial judge . . . .  Therefore, the decision of a trial judge will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (Miss. 2003) (citation omitted).

¶9.    "Mississippi law requires the trial court to ensure that proposed [expert] testimony satisfies Rule 702 of the Mississippi Rules of Evidence." ***Univ. of Miss. Med. Ctr. v. Pounders***, 970 So. 2d 141, 146 (Miss. 2007) (citing ***Donaldson v. Covington County***, 846 So. 2d 219, 226 (Miss. 2003)).  Mississippi Rule of Evidence 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, *or* education, may testify thereto in the form of an opinion or otherwise, *if* (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702 (emphasis added).  This Rule "recognizes the gate keeping responsibility of the trial court to determine whether the expert testimony is *relevant and reliable*."  Miss. R. Evid. 702 cmt. (emphasis added).

¶10.    By his own admission, Halfacre is not an accident reconstructionist.  However, for purposes of admitting his affidavit, such terminology or certification is unnecessary.  *See Pounders*, 970 So. 2d at 146 ("a witness need not be a specialist in any particular profession to testify as an expert . . . .  The scope of the witness's knowledge and experience, and not any artificial classification, governs the question of admissibility.") (citations omitted); *Sacks v. Necaise*, 991 So. 2d 615, 622 (Miss. Ct. App. 2007).  Halfacre possessed the professional qualifications to take the requisite measurements at the accident site and then input those figures into an accepted mathematical equation, in order to calculate Thomas's line of sight.[4]

---

[4]Halfacre's deposition provided that:

[m]y involvement in this is limited specifically to looking at time and distance measurements and doing a calculation on what two bodies, in this case a train

6

According to his resume, Halfacre received his Bachelor of Science degree in Engineering from Mississippi State University in 1974 and has been a registered professional engineer[5] since March 1, 1980. Furthermore, he is an member of the National Society of Professional Engineers, the Mississippi Engineering Society, and the American Society of Civil Engineers. As a "licensed, professional engineer[,]" Halfacre examined photographs of the accident site, reviewed relevant deposition testimony, and then visited the accident site in January 2005. At the accident site, Halfacre studied the topography and obstructions at the railroad crossing, observed trains approaching and crossing the railroad crossing, and positioned his engineering instruments at the same location that Thomas's tractor-trailer was positioned prior to the accident.[6] Halfacre then conducted measurements and collected line-of-sight data using engineering instruments and devices.[7] Regarding the subsequent calculations, Halfacre's deposition testimony is instructive:

> Q. . . . In making your time distance calculations, what engineering principles or what body of learning did you rely upon as a professional engineer in doing that?
>
> A. *Pretty elementary physics* in terms of motions studies from – I would say that *most engineers who have had two semesters of physics can calculate the speed and correlate that to a time distance travel.*

---

and truck, would travel in a given and specified length of time and comparing that time distance to the measured field of vision.

[5]According to Halfacre's deposition, in Mississippi "we're not registered as by discipline . . . . [W]e are registered professional engineers . . . ."

[6]According to Lay's deposition testimony, Thomas's truck was fifty feet from the railway upon his initial observation.

[7]According to Halfacre's deposition, "[t]he measurements we made would be, by most any standard, considered to be an application of engineering instruments . . . ."

(Emphasis added). From those calculations, Halfacre found that:

> 58-feet, . . . which is . . . the 50-feet from the nose of the truck plus the 8-feet to the driver's eyeballs, looking this way measuring the distance down the track would have been 447-feet.[8] Now, 447-feet, knowing that there's 5,280-feet in a mile and knowing that we're dealing with a closing speed of 50 miles an hour, doing that calculation means that there is only about a 6.8 or somewhat less than seven seconds time from the point where the 447-foot mark would be until the center of the crossing.

After providing his affidavit, but prior to his deposition, Halfacre verified his calculations using a recognized equation from *Train Accident Reconstruction and FELA and Railroad Litigation* by James R. Loumiet and William G. Jungbauer. According to Halfacre, applying that equation:

> reinforces the fact that 447 [feet] plus or minus what few percent of possible error that you could argue because of different seasons and height distance and whatever, if anything, reinforces the fact that there is not adequate field of vision there to move the distance that that vehicle would have moved to have cleared the tracks.[9]

¶11. Utilizing sound engineering principles and the laws of physics, obtained through "knowledge, skill, experience, training, or education," *see* Mississippi Rule of Evidence 702, as a registered professional engineer, Halfacre collected relevant line-of-sight data using appropriate engineering instruments and devices, and subsequently input that data into a recognized line-of-sight equation. From those calculations, Halfacre opined that the

---

[8]According to Halfacre's deposition testimony, "[t]hat tree line from the 58 foot mark limits a person's vision to a distance measured down the tracks to about 447 feet."

[9]Halfacre's deposition testimony provided:

Q. . . . The fact that you're using one formula or using your general education and experience the result is the same?

A. Exactly.

8

obstructions "prevented Kilhullen from seeing the approaching train until he was dangerously close to the railroad track."[10] In rejecting Halfacre's affidavit due to his lack of "specialized knowledge, training or expertise in the field of accident reconstruction[,]" this Court finds that the circuit court abused its discretion. Given his applied engineering expertise, classification as an accident reconstructionist was not necessary, *see Pounders*, 970 So. 2d at 146; *Sacks*, 991 So. 2d at 622, and this Court concludes that Halfacre's affidavit satisfied Mississippi Rule of Evidence 702.

**II.     Whether the circuit court abused its discretion in rejecting the affidavit of accident reconstructionist Brett Alexander.**

¶12.   The January 21, 2005, order of the circuit court held the motion for summary judgment in abeyance. On April 20, 2006, Kilhullen filed Alexander's affidavit, well before the June 12, 2006, hearing on the motion for summary judgment.[11] Nonetheless, the circuit court found Alexander's affidavit inadmissible, determining that it was impermissible "further discovery" and irrelevant under Mississippi Rule of Evidence 402.

¶13.   Mississippi Rule of Civil Procedure 56(c) states, in pertinent part, that "[t]he adverse party prior to the day of the [summary judgment] hearing may serve opposing affidavits." Miss. R. Civ. P. 56(c). Additionally, this Court has stated that "[w]e . . . require that, when an expert's opinion is challenged, the party sponsoring the expert's challenged opinion be given a fair opportunity to respond to the challenge. The provision of a fair opportunity to

_____

[10]Specifically, Halfacre's deposition noted that "[i]f we're over 447 feet, we're out of his line of sight. If that train is closer in than 1955 feet, there is not adequate time to clear."

[11]Even the Court of Appeals acknowledged that "the second hearing addressed the propriety of summary judgment . . . ." *Kilhullen*, 2008 Miss. App. LEXIS 195 at *19.

9

respond is part of the trial court's gate keeping responsibility . . . ." ***Smith v. Clement***, 2008 Miss. LEXIS 172 at *11 (Miss. 2008). As Alexander's affidavit was filed nearly two months prior to the June 12, 2006, hearing, this Court finds that its submission was permissible under the "twenty-four-hour rule" of Mississippi Rule of Civil Procedure 56(c). The circuit court erroneously applied the rules of discovery, *see* Mississippi Rules of Civil Procedure 26-37, when the rule regarding affidavits filed in opposition to a motion for summary judgment was applicable. *See* Miss. R. Civ. P. 56(c). Accordingly, by failing to acknowledge the applicability of Rule 56(c) or to provide Kilhullen with "a fair opportunity" to respond to Halfacre's challenged opinion, this Court concludes that the circuit court abused its discretion in finding Alexander's affidavit inadmissible.

### III. Whether the circuit court erred in granting summary judgment for Kansas City Southern and Lay.

¶14. The circuit court's grant of a motion for summary judgment is reviewed by this Court de novo. *See **Wilner v. White***, 929 So. 2d 315, 318 (Miss. 2006). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The Comment to Rule 56 adds that "summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried . . . . [I]t cannot be used to deprive a litigant of a full trial of genuine fact issues." Miss. R. Civ. P. 56 cmt. In this Court's de novo

10

review, "[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." **Daniels v. GNB, Inc.**, 629 So. 2d 595, 599 (Miss. 1993) (citation omitted).

¶15. The opinions of the circuit court and Court of Appeals regarding summary judgment are predicated upon the propriety of rejecting the affidavits of Halfacre and Alexander. However, this Court finds that the circuit court abused its discretion in excluding those affidavits. *See* Issues I. and II. *supra.* Given the admissibility of Halfacre and Alexander's affidavits, for purposes of summary judgment and when reviewed in the light most favorable to Kilhullen, this Court finds that genuine issues of material fact exist for a jury to consider in determining the liability, vel non, of Kansas City Southern and Lay.[12]

---

[12]Additionally, Mississippi Code Annotated Section 77-9-249(3) provides:

[i]n the trial of all actions to recover personal injury or property damages, sustained by any driver of such vehicles for collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions hereof, the question of whether or not the said violation was the sole or approximate cause of the accident and injury *shall be for the jury to determine*. The violation of this section shall not of itself defeat recovery, and the question of negligence or the violation aforesaid *shall be left to the jury*; and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence.

Miss. Code Ann. § 77-9-249(3) (Rev. 2000). *See also* **Clark v. Ill. Central R.R. Co.**, 794 So. 2d 191, 194-95 (Miss. 2001).

11

## CONCLUSION

¶16. Based upon the aforementioned analysis, this Court reverses the circuit court and Court of Appeals, and remands for further proceedings.

¶17. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, AND PIERCE, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.**