## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2014-CA-00941-SCT

*MEMORIAL HOSPITAL AT GULFPORT*

*v.*

*BARRY G. WHITE*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | BEN F. GALLOWAY, III |
| | JOE SAM OWEN |
| | ROLAND F. SAMSON, III |
| | THOMAS L. CARPENTER, JR. |
| | MICHAEL STEPHEN McGLOTHEREN |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROLAND F. SAMSON, III |
| | MATTHEW FORTE POWERS |
| ATTORNEYS FOR APPELLEE: | BEN F. GALLOWAY, III |
| | JOE SAM OWEN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 07/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.   In this medical-negligence lawsuit brought against Memorial Hospital at Gulfport, the circuit judge entered a judgment for the plaintiff, Barry G. White.  On appeal, Memorial attacks White's expert witnesses' testimony, claiming they failed to provide medical literature to support their opinions.  Because they were not required to do so, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On August 8, 2009, at approximately 8:00 a.m., White arrived at Hancock Medical Center's emergency room, suffering from slurred speech and tingling in his extremities. But after a CT scan came back negative for any acute intracranial findings, he was released.

¶3.     The next day, White experienced slurred speech and left-sided numbness, so he went to Memorial Hospital's emergency room at approximately 2:07 p.m., and advised the nurses that he thought he was having a stroke. After being diagnosed with left-sided tingling/hypertension, he was given Norvasc for blood pressure, instructed to follow up with his personal physician during the week, and discharged.

¶4.     The following day, White returned to Hancock Medical Center's emergency room at approximately 3:57 a.m., complaining that he had fallen about an hour earlier. He informed the medical personnel that he could not move his left upper or lower extremities and that he had difficulty speaking. He was then transported to Memorial Hospital, where he arrived and was admitted at approximately 6:29 a.m. A CT scan showed no acute intracranial findings, but on August 11, 2009, an MRI showed a completed stroke. On August 14, 2009, White was admitted to Physical Medicine and Rehabilitation, where he remained until he was discharged on September 15, 2009. White then underwent approximately four to five months of out-patient occupational therapy, speech therapy, and physical therapy.

¶5.     White then filed this medical malpractice action in the Harrison County Circuit Court, claiming that Hancock Medical Center and Memorial Hospital failed to provide the correct

diagnosis. He alleged that, had he received the appropriate treatment, the completed stroke could have been prevented. White settled with Hancock prior to trial, leaving only his claim against Memorial.

¶6. Before trial, Memorial moved for summary judgment and to exclude the testimony of White's medical experts, Dr. Bryan Barrilleaux and Dr. Terry Millette, arguing that their opinions on medical causation should be excluded because they were not supported by medical literature or peer-reviewed studies. After hearing argument from the parties, the circuit judge took the motion under advisement.

¶7. At trial, White offered testimony from Drs. Barrilleaux and Millette, who both testified that, had White been admitted as an inpatient to Memorial on August 9, 2009, he would have had a reasonable probability—more than a fifty-percent chance—of substantial improvement. Memorial offered expert testimony from Dr. Hartmut Uschmann that supported only a "small chance," or possibility of a substantially better outcome. The circuit judge entered a judgment for White.

## ANALYSIS

¶8. Memorial Hospital presents four issues on appeal:

I. Whether the trial court erred in not excluding the testimony of Drs. Barrilleaux and Millette at trial.

II. Whether the trial court erred by denying the Memorial Hospital's post-trial Motion to Dismiss pursuant to Mississippi Rule Civil Procedure 41(b), notwithstanding that White's medical experts' opinions on causation were at odds with medical literature and based solely on personal experience.

3

III. Whether the trial court's Opinion and Judgment and Final Judgment was against the substantial, credible, and reasonable evidence on the issue of medical causation.

IV. Whether the trial court erred in denying the Memorial Hospital's post-trial motions to Alter or Amend Findings of Fact and Conclusion of Law and Judgment, to Alter or Amend Judgment, or alternatively, for a New Trial.

¶9. The substance of each claim of error presents the same basic question: whether medical experts must provide medical literature or peer-reviewed studies to support the opinions they provide. Essentially, Memorial argues that either the trial judge erred by failing to exclude White's expert testimony because the experts failed to provide medical literature with their reports or that White failed to prove causation for the same reason. We disagree.

¶10. To prevail in a medical-malpractice case, the plaintiff must prove (1) that there was "a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant."[1] To prove "these elements in a medical malpractice suit, expert testimony must be used,"[2] and the expert must articulate and identify the standard of care that was breached and establish that the breach "was the proximate cause, or proximate contributing

---

[1] *Hubbard v. Wansley*, 954 So. 2d 951, 956-57 (Miss. 2007) (citing *Drummond v. Buckley*, 627 So. 2d 264, 268 (Miss. 1993)).

[2] *Hubbard*, 954 So. 2d at 957.

4

cause, of the alleged injuries."[3]  "Our well-settled standard of review for the admission or suppression of evidence is abuse of discretion."[4]  "[T]he admission of expert testimony is within the sound discretion of the trial judge."[5]  And we will reverse a trial court based on an erroneous evidentiary ruling "unless a substantial right of the party is affected."[6]

¶11.    Mississippi law recognizes the legal theory of the "loss of a chance," which White utilized in this case.[7]  To recover under this theory, the plaintiff must prove that, but for the physician's negligence,[8] he or she had a reasonable probability of a substantial improvement. A plaintiff cannot recover by showing a mere possibility of a "chance of recovery."[9]  Stated another way, the plaintiff must offer proof of "a greater than fifty (50) percent chance of a better result than was in fact obtained."[10]

---

[3] *Id.* (citing **Barner v. Gorman**, 605 So. 2d 805, 809 (Miss. 1992)).

[4] **Miss. Transp. Comm'n v. McLemore**, 863 So. 2d 31, 34 (Miss. 2003) (citing **Haggerty v. Foster**, 838 So. 2d 948, 958 (Miss. 2002)).

[5] **McLemore**, 863 So. 2d at 34 (citing **Puckett v. State**, 737 So. 2d 322, 342 (Miss. 1999)).

[6] Miss. R. Evid. 103(a).

[7] **Clayton v. Thompson**, 475 So. 2d 439, 445 (Miss. 1985).

[8] *Id.*

[9] *Id.*

[10] **Hubbard**, 954 So. 2d at 964 (quoting **Ladner v. Campbell**, 515 So. 2d 882, 889 (Miss. 1987)).

5

¶12.    White's experts provided the testimony necessary to satisfy these standards. Memorial does not challenge that fact but argues instead that the experts did not provide medical literature that confirms their testimony. But, under our precedent, medical experts are not required to support their opinions with medical literature.[11] We did state in *Hill v. Mills*[12] that "when an expert (no matter how qualified) renders an opinion that is attacked as not accepted within the scientific community, the party offering that expert's opinion must, at a minimum, present the trial judge with *some evidence* indicating that the offered opinion has some degree of acceptance in the scientific community."[13] But we made it clear that we were not creating a requirement that an expert's opinion be supported by peer-reviewed literature.[14] Indeed, we stated that we were not retreating from our ruling in *Poole,* where we held that peer-reviewed literature and publications are not absolutely required, and their absence does not constitute automatic inadmissibility.[15]

¶13.    Here, Memorial did not challenge the opinions of White's experts as contrary to the scientific community. And it did not present medical literature that contradicted the opinions of White's experts. Rather, this case presents nothing more than a classic example of a

---

[11] *Poole v. Avara*, 908 So. 2d 716, 724 (Miss. 2005).

[12] *Hill v. Mills*, 26 So. 3d 322 (Miss. 2010).

[13] *Id.* at 331 (emphasis added).

[14] *Id.* at 332.

[15] *Id.* (citing *Poole*, 908 So. 2d at 724).

6

"battle of the experts."[16] White presented experts who supported a reasonable probability of a substantially better outcome, whereas Memorial offered expert testimony that supported only a potential chance of a substantially better outcome. And as we consistently have held, the fact-finder—in this case, the trial judge—determines the winner of a battle of experts.[17]

## CONCLUSION

¶14. Because White's experts satisfied the requirements of the "loss of a chance" doctrine, and because they were not required to provide medical literature to support their testimony, we affirm the judgment of the Circuit Court of Harrison County.

¶15. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

---

[16] *Hill*, 26 So. 3d at 330.

[17] *Id.*