KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶41. Because the plaintiffs offered sufficient evidence to avoid the exclusion of their experts at the summary judgment phase, I would reverse the circuit court's judgment and remand for further proceedings.
 

 ¶42. As the majority correctly articulates, the loss-of-a-chance doctrine controls this appeal. Under that doctrine, the plaintiffs must show that, "but for the physician's negligence, [Charles Norman Sr.] had a reasonable probability of a substantial improvement.... Stated another way, the plaintiff[s] must offer proof of 'a greater than fifty (50) percent chance of a better result than was in fact obtained.' "
 
 Mem'l Hosp. at Gulfport v. White
 
 ,
 
 170 So.3d 506
 
 , 508-509 (¶ 11) (Miss. 2015).
 

 ¶43. Dr. Harmut Uschmann, one of the plaintiffs' experts, provided deposition testimony that Norman, who had suffered a stroke, would have had a greater than 50 percent chance of improvement had he received timely administration of tPA-a clot-buster drug used to neutralize the effects of a stroke. Anderson Regional Medical Center disputed Dr. Uschmann's testimony, arguing that greater than 50 percent improvement chances could not be supported by the relevant medical literature. The Circuit Court of Lauderdale County agreed with the hospital, excluded the plaintiffs' medical experts, and granted summary judgment.
 

 ¶44. On appeal the plaintiffs argue,
 
 inter alia
 
 , that the circuit court erred by relying on statistics that set a higher standard than what is required under the loss-of-a-chance doctrine. As an example, the circuit court examined percentages of tPA efficacy in relation to a "favorable outcome" as defined by the NINDS study. According to that study, a "favorable outcome" means a "score of 95 or 100 on the Barthel index, [less than or equal to] 1 on the NIHSS and a modified Rankin Scale, and 1 on the Glasgow outcome scale." Under the Barthel index, a score of 100 applies to a patient who is completely independent, or, in other words, a patient who achieves a perfect result. The plaintiffs correctly assert that the loss-of-a-chance doctrine
 "does not require that a plaintiff prove a greater than fifty percent chance of
 
 a perfect result or complete recovery
 
 ." The plaintiffs need only to show that Norman lost "a greater than fifty (50) percent chance of a
 
 better result
 
 than was in fact obtained."
 
 White
 
 ,
 
 170 So.3d at 509
 
 (¶ 11) (emphasis added).
 

 ¶45. In light of the proper standard, the plaintiffs point to evidence contained in the record that supports the theory that Norman could have had a greater than 50 percent chance of a
 
 better result
 
 . For example, the Safe Implementation of Treatments in Stroke-International Stroke Thrombolysis Registry (SITS-ISTR) found that 58 percent of patients administered tPA in 3.0 to 4.5 hours after a stroke were functionally independent after three months. The hospital challenges the significance of these statistics, but that dispute is for resolution by a fact finder, not by this Court.
 
 Hill v. Mills
 
 ,
 
 26 So.3d 322
 
 , 330 (¶ 28) (Miss. 2010) ("[A] battle of the experts is to be decided by a jury.").
 

 ¶46. In
 
 Cox v. St. Joseph's Hospital
 
 ,
 
 71 So.3d 795
 
 , 799 (Fla. 2011),
 
 [12]
 
 the Florida Supreme Court addressed the same issue raised in this case. After reviewing much of same medical literature that is before us, the
 
 Cox
 
 court determined that the tPA studies have created "conflicting evidence as to ... causation or the likelihood of causation."
 

 Id.
 

 at 801
 
 . Specifically, the court acknowledged that "the significance of [the] statistics from the NINDS study ... is a matter for the jury, not a matter for the appellate court to resolve as a matter of law."
 

 Id.
 

 As did the Florida Supreme Court, I find that the significance of the statistics from the tPA studies should be resolved by a fact finder rather than by a summary judgment order.
 

 ¶47. Because I would afford relief to the plaintiffs under the current state of Mississippi law, I do not reach their request for a change in our loss-of-a-chance doctrine. Analysis of that argument is unnecessary for disposition of this case and, therefore, would amount to
 
 obiter dicta
 
 and an advisory opinion. "[T]his Court does not issue advisory opinions."
 
 Tallahatchie Gen. Hosp. v. Howe
 
 ,
 
 49 So.3d 86
 
 , 93 (¶ 19) (Miss. 2010).
 

 ¶48. The circuit court abused its discretion in excluding the plaintiffs' experts and erred in granting summary judgment. Further trial court proceedings are needed to resolve the issues in this case. I respectfully dissent.
 

 KING AND COLEMAN, JJ., JOIN THIS OPINION.
 

 Florida's loss-of-a-chance doctrine mirrors that of this Court, making
 
 Cox
 
 not only relevant but also persuasive.