# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-01378-SCT

*MISSISSIPPI BAPTIST HEALTH SYSTEMS INC.
AND MISSISSIPPI BAPTIST MEDICAL CENTER,
INC.*

*v.*

*SHEMIKA HARRIS, MOTHER AND NEXT
FRIEND OF MEKHI JORDAN ARD, A MINOR
AND LAKINA WALKER, MOTHER AND NEXT
FRIEND OF CALEB ARD, A MINOR AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF ROOSEVELT ARD, III,
DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2019 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| TRIAL COURT ATTORNEYS: | WILLIAM W. FULGHAM |
| | TINA MARIE BULLOCK |
| | D. COLLIER GRAHAM, JR. |
| | MALLORY MILLER STREET |
| | DAVID W. UPCHURCH |
| | GWENDOLYN MAY KENNEDY |
| | LEO JOSEPH CARMODY, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | D. COLLIER GRAHAM, JR. |
| | REBECCA HAWKINS |
| | MALLORY MILLER STREET |
| ATTORNEY FOR APPELLEES: | WILLIAM W. FULGHAM |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 06/17/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Mississippi Baptist Medical Center (MBMC) sought, and this Court granted interlocutory appeal challenging the Circuit Court of the First Judicial District of Hinds County's denial of its motion for summary judgment. Mississippi Baptist Health System (MBHS) also appeals the circuit court's order granting summary judgment in its favor, claiming that the circuit court erred by granting the judgment without prejudice instead of with prejudice.

¶2. We find that the circuit erred by denying MBMC's motion for summary judgment since the Plaintiffs failed to establish the element of causation in their medical-malpractice claim against MBMC. We also find that the circuit court erred by not dismissing the Plaintiffs' claims against MBHS with prejudice.

## FACTS AND PROCEDURAL HISTORY

¶3. At 11:50 a.m., on January 13, 2016, Roosevelt Ard arrived at the emergency room at MBMC complaining of chest pain and leg numbness after earlier undergoing an outpatient cardiac stress test.

¶4. Ard had been routinely seen by his personal cardiologist and had a medical history of coronary artery disease, previous heart attack, hypertension, ischemic cardiomyopathy, and dyslipidemia.

¶5. In the emergency department, Ard was triaged at 12:02 p.m. by Myrne Stinson, R.N., who noted that his pain was 10/10, with 10 being the most painful. At 12:30 p.m., Jeffrey Davidson, R.N., made further note of Ard's continued pain.

¶6.     Ard was then assessed and treated by Dr. William Dawson, an emergency-medicine physician employed by Mississippi Physicians, LLP. Dr. Dawson ordered one shot of Dilaudid for Ard's pain. He then ordered a chest X-ray and EKG, which were both normal, ruling out cardiovascular issues. Dr. Dawson diagnosed Ard with acute back strain and discharged him with a prescription for oral pain relief and muscle relaxants.

¶7.     Eight hours after being discharged, Ard became unresponsive at home and was rushed to the emergency room at University of Mississippi Medical Center (UMMC) via ambulance, where he was pronounced dead after cardiac arrest. Ard's autopsy report showed that the cause of death was aortic dissection.

¶8.     On December 20, 2016, Plaintiffs Shemika Harris and Latina Walker, on behalf of Ard's two minor children, filed a complaint against MBMC, MBHS, Dr. Dawson, and Mississippi Physicians.

¶9.     Plaintiffs' allegations are two-fold. First, Plaintiffs argue that MBMC is vicariously liable for the medical care rendered by Dr. Dawson at MBMC's emergency department. Second, Plaintiffs argue, MBMC is vicariously liable for the allegedly negligent care provided by its nursing employees in the emergency department.

¶10.    After the Plaintiffs did not answer MBMC and Dr. Dawson's propounded discovery for two years, MBMC filed a motion for summary judgment. MBMC asserts that it was not vicariously liable and that negligence could not have proximately caused Ard's injuries.[1]

---

[1]MBMC's defense that it is not vicariously liable for Dr. Dawson's independent acts or omissions is outside the scope of this appeal. MBMC's petition for interlocutory appeal was granted solely to address the claim against MBMC's nurses.

¶11. MBHS also filed a summary-judgment motion, presenting evidence that it had no legal relation to Plaintiffs' claims of medical negligence, since MBMC is the corporate entity that operates the hospital and since no employee of MBHS was negligent because no employee provided care or treatment to Ard.

¶12. Plaintiffs then filed an affidavit of Dr. Daniel Abbott in response to MBMC's summary-judgment motion and a Notice of Limited Confession regarding MBHS's summary-judgment motion.[2] Plaintiffs confessed and agreed that MBHS could be dismissed from the case because MBMC, not MBHS, was the contracting party and operated the hospital and its emergency department. The circuit court entered an order granting MBHS's motion but amended the order to state, "without prejudice." The circuit court also entered an order denying MBMC's motion for summary judgment.

¶13. MBMC and MBHS sought interlocutory review of the circuit court's orders denying MBMC's motion for summary judgment and granting MBHS's motion for summary judgment without prejudice. This Court initially granted review only on the first issue but on reconsideration granted review of the second issue too.

## DISCUSSION

I. **Whether the circuit court erred by denying MBMC's motion for summary judgment.**

¶14. "This Court reviews a trial court's grant of summary judgment de novo." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 523 (Miss. 2019) (citing *Kilhullen v. Kansas*

---

[2]The affidavit was also submitted in response to Dr. Dawson's motion for summary judgment. Dr. Dawson and Mississippi Physicians withdrew their motion, which was based on Plaintiffs' failure to produce expert testimony.

4

*City S. Ry.*, 8 So. 3d 168, 174 (Miss. 2009)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Miss. R. Civ. P. 56(c)). "Evidence will be viewed in the light most favorable to the nonmoving party." *Id.* (citing *Kilhullen*, 8 So. 3d at 174-75).

> "[S]ummary judgment is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.*, 952 So. 2d 177, 180 (Miss. 2007) (internal quotation marks omitted) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)). Therefore, "to survive summary judgment, the opposing party may not rely on mere allegations but must set forth specific facts to show genuine issues for trial." *Patterson v. T. L. Wallace Constr., Inc.*, 133 So. 3d 325, 329 (Miss. 2013) (citing *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 914 (Miss. 2011), *overruled on other grounds by Springer v. Ausbern Constr. Co., Inc.*, 231 So. 3d 980, 988 (Miss. 2017)).

*Smith v Hardy Wilson Mem'l Hosp.*, 300 So. 3d 991, 996 (Miss. 2000).

¶15.    "To establish a *prima facie* case of medical malpractice under Mississippi law, a plaintiff must prove by a preponderance of the evidence (1) the applicable standard of care; (2) a failure to conform to the required standard; and (3) an injury proximately caused by a defendant's noncompliance with the standard." *Norman*, 262 So. 3d at 523 (citing *Mem'l Hosp. at Gulfport v. White*, 170 So. 3d 506, 508 (Miss. 2015)).  The narrow issue before this Court is causation.

¶16.    Plaintiffs' complaint alleges failure to conform to the standard of care by nursing staff. MBMC argued in its motion for summary judgment that, first, Plaintiffs failed to present

5

evidence that any employee of MBMC breached its duty to Ard and, second, Plaintiffs failed

to show how the nursing staff proximately caused Ard's injuries.[3]

> [T]o recover under the loss-of-chance theory, "the plaintiff must prove that, but for the physician's negligence, he or she had a reasonable probability of a substantial improvement." **White**, 170 So. 3d at 508 (citing [**Clayton v. Thompson**, 475 So. 2d 439, 445 (Miss. 1985]). "Stated another way, the plaintiff must offer proof of 'a greater than fifty (50) percent chance of a better result than was in fact obtained.'" **White**, 170 So. 3d at 509 (quoting **Hubbard v. Wansley**, 954 So. 2d 951, 964 (Miss. 2007)).

**Hyde v. Martin**, 264 So. 3d 730, 734-35 (Miss. 2019).

¶17. Plaintiffs' medical expert, Dr. Abbott opined that the nursing staff did not meet the

standard of care because they did not reevaluate Ard after his injection shot or at the time of

discharge. Dr. Abbott further asserted that,

> [h]ad these things been done, it is highly likely that it would have been discovered that the patient was still suffering from significant pain. Acting as a patient advocate the nurse(s) should have notified the EDMD of the ongoing pain and asked for further evaluation of the patient before discharging him. Because Ard was hemodynamically stable in the ED and because he lived into the night on January 13, 2016, it is more likely than not, that had the emergency surgery been done, he would have survived.

¶18. MBMC argues that Dr. Abbott's affidavit does not create any factual issue because

Dr. Abbott cannot reliably claim that Dr. Dawson would have acted differently had he been

---

[3]At the time the summary-judgment motion was filed, Plaintiffs had not submitted expert testimony. Unless the subject matter is within the common knowledge of laypersons, expert testimony is required to meet this burden. **Palmer v. Biloxi Reg'l Med. Ctr**., 564 So. 2d 1346, 1355 (Miss. 1990). It is the most basic rule that a prima facie case for medical malpractice cannot be shown without expert testimony. **Brooks v. Roberts**, 882 So. 2d 229, 232 (Miss. 2004). After the motion was filed, however, Plaintiffs submitted Dr. Abbott's affidavit.

informed by the nursing staff of Ard's continued pain. Ard's medical records show that Dr. Dawson was aware Ard was still in pain because Ard's family informed him.[4]

¶19. The undisputed evidence is that Dr. Dawson evaluated Ard and diagnosed his pain as orthopedic rather than cardiovascular. Dr. Dawson ordered Ard a pain injection, and Ard's family later informed Dr. Dawson that he was still in pain. Dr. Dawson completed his evaluation and approved Ard's discharge, ordering him outpatient medication, knowing his pain would likely continue.

¶20. Plaintiffs argue that it is not just Dr. Dawson's lack of knowledge of his pain but instead that he needed to know about the severity and character of Ard's pain that went into the calculation of his treatment and that the nurses failed to notify Dr. Dawson of the severity of Ard's pain. However, MBMC contends that the affidavits speaks nothing of this and, regardless, any claim that further knowledge regarding the severity or character would have changed Dr. Dawson's diagnosis is mere speculation.

¶21. Nothing in the record supports that, after having performed an evaluation of Ard to determine the source of his continued pain, Dr. Dawson would have changed the course of treatment had a nurse urged him to do so based on a single piece of information Dr. Dawson already knew and had considered.

¶22. "Proof of causation 'must not leave the causal connection a matter of conjecture; it must be something more than consistent with the plaintiff''s theory . . . .'" *Smith*, 300 So. 3d

_____

[4] Plaintiffs also contend that it is not sufficient that the family told Dr. Dawson of the pain rather than the nurses. We find this makes no difference as it was a medical fact in the record relied on by Plaintiffs' expert.

7

at 996 (citing *Huynh v. Phillips*, 95 So. 3d 1259, 1264 (Miss. 2012)). Here, Plaintiffs' theory is that had the nurses reassessed Ard's pain twenty-two minutes between Dr. Dawson's completing his evaluation, in which Dr. Dawson diagnosed Ard's pain as orthopedic and ordered Ard discharged with medication, and if the nurses had informed Dr. Dawson that Ard was still in pain, Dr. Dawson would have evaluated Ard further and would have changed the course of his treatment.

¶23. "This Court has explained that experts 'may not assume facts not supported by the record.'" *Id.* (quoting *Treasure Bay Corp. v. Ricard*, 967 So. 2d 1235, 1242 (Miss. 2007)). Dr. Dawson's evaluation of Ard, completed at 1:33 p.m., notes that Ard was still suffering from moderate pain even after the injection. His notes also show that Ard's family had stated he was still in pain.

¶24. "An expert's opinion 'must rise above mere speculation.'" *Id.* (quoting *Parvin v. State*, 113 So. 3d 1243, 1247 (Miss. 2013)). "Expert testimony will always be deemed unreliable if it is the product of subjective belief or unsupported speculation." *Id.* (internal quotation marks omitted) (quoting *Corrothers v. State*, 148 So. 3d 278, 294 (Miss. 2014)).

¶25. At most, Dr. Abbott's affidavit implied that had the nurses notified Dr. Dawson he was still in pain and further evaluated him, then maybe Dr. Dawson would have changed his mind, discovered that the source of the pain was not orthopedic, ordered a CT scan, discovered the dissection, and ordered emergency surgery. No proof was presented that Dr. Dawson would have changed his mind.

8

¶26. Because Plaintiffs could not establish causation and could not make a prima facie case of medical negligence as to the nursing staff of MBMC, the circuit court erred by denying summary judgment. We reverse the denial of summary judgment and render judgment of dismissal in favor of MBMC. The record contains no evidence supporting Plaintiffs' claims against the nursing staff.

## II. Whether the circuit court erred by granting MBHS's motion for summary judgment without prejudice.

¶27. Plaintiffs' notice of limited confession regarding MBHS's summary-judgment motion, conceded that MBMC operated the hospital and its emergency department. Because the undisputed facts show that MBHS has no legal relation to Plaintiffs' claims of medical negligence at MBMC, MBHS was entitled to judgment in its favor. The circuit court granted MBHS's motion; however, the motion was amended to state it was dismissed without prejudice.

¶28. MBHS argues that Plaintiffs actually agreed to dismissal of these claims although they sought to have the claims dismissed without prejudice. MBHS argues that Rule 41 dismissals of the Mississippi Rules of Civil Procedure do not apply here as Plaintiffs admitted there was no dispute that MBHS did not operate the hospital or its emergency department; therefore, MBHS argues that the order should state, "with prejudice." By granting the motion without prejudice, the court left MBHS susceptible to Plaintiffs' relitigating these same claims against MBHS.

¶29. In *Rivera v. PNS Stores, Inc.*, "[plaintiff ] contends that the district court exceeded its authority under Rule 60(a) when it corrected the judgment dismissing [plaintiff's] case

9

to reflect that the dismissal was 'with prejudice' instead of 'without prejudice.' However, the district court had adjudicated [plaintiff's] claims on their merits via a grant of summary judgment, and a grant of summary judgment necessarily results in a dismissal with prejudice." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 191 (5th Cir. 2011). We adopt the reasoning of the United State Court of Appeals for the Fifth Circuit.

¶30. Indeed, the very concept of granting summary judgment without prejudice is internally incoherent:

> "Without prejudice" indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties. Summary judgment, on the other hand, is the procedural equivalent of a trial and is an adjudication of the claim on the merits. Thus, to grant summary judgment without prejudice is to say that although there has been an adjudication on the merits, it is not conclusive as to the rights of the parties. . . . [This] is logically inconsistent.

*Id.* (alterations in original) (quoting *Poulos v. Reda*, 520 N.E.2d 816, 823 (Ill. App. Ct. 1987)).

¶31. Here, Plaintiffs have not factually contested the motion and instead factually conceded it.[5] Upon Plaintiffs' receipt of the contract between MBMC and Dr. Dawson's employer, Plaintiffs admitted they had no basis for a claim against MBHS. Thus, because MBHS is not liable to Plaintiffs as a matter of law and there exists no issue of material fact to be determined by a jury, we find that the order granting MBHS's summary-judgment motion should be amended to state that the claims against MBHS are dismissed with prejudice.

**CONCLUSION**

---

[5] Plaintiffs offered no response to MBHS's petition seeking interlocutory review of the circuit court's order granting its motion.

10

¶32. Because no genuine issue of material fact was presented as to the medical care provided by the nursing staff at MBMC, the circuit court erred by denying MBMC's motion for summary judgment. Accordingly, we reverse the circuit court's order, and we render summary judgment in favor of MBMC. The circuit court's order granting summary judgment in favor of MBHS is affirmed, but it is modified to indicate that the claims against MBHS are dismissed with prejudice.

¶33. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**