ROBERTS, J.,
for the Court:
¶ 1. This appeal stems from a fire that damaged a commercial building owned by Perry Investment Group LLC (“Perry”). Perry claimed that the fire was caused by the power cord to a Coca-Cola vending machine that Perry’s tenant, Hudson’s Dirt Cheap LLC (Dirt Cheap), allowed to be placed in the building. Perry sued Dirt Cheap and the company that owned the Coca-Cola vending machine, CCBCC Operations LLC (CCBCC). Perry also sued the manufacturer of the vending machine, but it later settled that claim. Dirt Cheap and CCBCC each filed motions for summary judgment. Ultimately, the Jones County Circuit Court, granted both motions for summary judgment. Perry appeals. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Perry owned a commercial building in Richton, Mississippi. Dirt Cheap leased part of Perry’s building. Through Dirt Cheap, CCBCC[1] obtained permission to put a Coca-Cola vending machine inside the building. Timothy Sanchez was the CCBCC sales representative who maintained and serviced the vending machine. Sanchez’s last service call to Dirt Cheap was on May 28, 2008. Sanchez noted that the vending machine was in good working order.
¶ 3. At approximately 4:00 a.m. on June 2, 2008, a burglar alarm indicated that *891 there had been movement inside Dirt Cheap. Specifically, the alarm indicated that there had been movement near the entrance to the store. Officer Dennis Smith of the Richton Police Department responded and saw no sign of entry into the building.
¶ 4. Approximately forty minutes later, three different motion detectors went off inside the building. Officer Smith returned and saw fire inside the building. Officer Smith alerted the Richton Volunteer Fire Department (RVFD). Within minutes, RVFD responded. RVFD put out the fire with assistance from volunteer fire departments from Runnelstown and New Augusta, Mississippi. Unfortunately, the fire damaged a significant portion of the store.
¶ 5. On August 22, 2008, fire investigator Gary Jones, CFI, CFEI, first visited the scene of the fire at the request of Perry’s attorney. A number of representatives from Travelers Insurance and Dirt Cheap were present during Jones’s inspection. Additionally, engineer John W. Lipscomb Jr., PhD, PE, also inspected the scene.
¶ 6. Approximately one month later, Jones finalized his written but unsworn report for Perry’s attorney. According to Jones, the fire began inside the front of the building, but behind the vending machine. Jones reported that “fire movement and heat[-]intensity patterns” indicated that the fire did not begin in the office that was near the front of the building. Jones noted that the vending machine’s power[-]supply cord exhibited “signs of arcing and beading.” Consequently, Jones concluded that “the electrical outlet was energized when the electrical activity developed in the cord,” and “a failure in the receptacle or its electrical conductors could not have taken place since this would have de-energized the power cord.”
¶ 7. Jones opined that the sequence of the burglar alarms supported the theory that the fire began near the back of the vending machine. Jones reported that the vending machine was “located within the monitoring system’s area of surveillance and could have produced sufficient smoke to cause the activation of the [first] alarm.” Jones further opined that the subsequent alarms were triggered by smoke as the fire spread to other parts of the building. Jones said that Officer Smith would not have been able to see flames behind the vending machine when he investigated the first alarm. However, Officer Smith saw the flames, which were about “knee high,” when he investigated the subsequent alarms.
¶ 8. Jones discounted a theory that was being considered by a representative of Travelers Insurance that connected the fire to the theft of gasoline that had occurred the same night as the fire. Jones stated that authorities had arrested two teenagers involved in the theft of gasoline, “and no evidence was uncovered to show a link with th[e] theft and the fire.”
¶ 9. Approximately two weeks after Jones finalized his written report, Dr. Lipscomb finished his own unsworn written report. Dr. Lipscomb also reported that the fire originated near the vending machine. Dr. Lipscomb opined that an electrical arc in the vending machine’s power cord ignited some unspecified flammable material adjacent to the vending machine. According to Dr. Lipscomb, “[t]he most likely cause of the electric arc was mechanical insulation damage to the power cord[,]” and the damage to the power cord “was probably crushing.” Dr. Lipscomb added that “[a] crushed wire can overheat slowly, melting the insulation slowly, causing additional conductor con *892 tact and additional current to flow over time. Consequently, the final arcing which occurs with complete insulation failure can occur a long time after the crushing event.” Finally, Dr. Lipscomb stated that “[c]ontinuous crushing [of a power cord] can also cause delayed arcing.”
¶ 10. During November 2010, Perry sued Dirt Cheap, CCBCC, and Royal Vending Inc.[2] Perry raised causes of action related to general negligence, products liability, and breach of implied warranty of merchantability. Perry requested compensatory and punitive damages.
¶ 11. CCBCC filed its answer approximately one month later. CCBCC denied that it was liable for any damages that were caused by the fire. CCBCC submitted that Perry’s “claims are barred by or are due to be reduced by” Perry’s “spoliation of evidence in that [Perry] failed to give [CCBCC] timely notice of [Perry’s] claims or ... the fire.”[3] Dirt Cheap filed its own answer denying liability for Perry’s damages related to the fire. Volleys of discovery requests and responses followed, including numerous motions to compel discovery.
¶ 12. On April 26, 2012, Sanchez signed an affidavit. As mentioned previously, Sanchez was the CCBCC sales representative who serviced the vending machine. Sanchez swore that he visited Dirt Cheap ten times during 2008. His last visit was May 28, 2008, which was five days before the fire. According to Sanchez:
Each time that [he] visited the Hudson’s Dirt Cheap store in Richton, Mississippi, [he] used an AC voltage sensor, which is also referred to as a test pin, to test the grounding condition of the ... vending machine located there, and each time [he] found that it was properly grounded. Each time that [he] visited the ... store ..., [he] also performed a visual inspection of the machinef ] and its power cord, and both the machine[ ] and its power cord[ ] were always in good condition with no signs of damage. Moreover, the power cord on the machine was not caught between the machine and the wall or anything else or crimped or compressed or anything of that sort which might have caused it to be damaged.
Sanchez added that if the vending machine had been moved or if the power cord had been damaged, it could only have been after his last visit on May 28, 2008.
¶ 13. Charlotte Thompson also executed an affidavit. Thompson swore that she was CCBCC’s territorial manager for equipment service. Thompson further swore that she reviewed records related to the vending machine at issue. According to Thompson, the vending machine had been set up properly, and it had been properly grounded. Thompson also said that visual inspections indicated that the vending machine had been in good working order. Thompson added that Perry did not claim that the vending machine had anything to do with the fire until more than a year after the fact.
¶ 14. A few days later, engineer Thomas Claxton executed an affidavit. Claxton had visited the scene of the fire at CCBCC’s request on September 17, 2010. According to Claxton, his investigation had been adversely affected by two factors: (1) *893 Perry’s failure to promptly notify CCBCC of the theory that the vending machine caused the fire; and (2) Perry’s failure to preserve the scene of the fire. Claxton further swore that Perry’s neglect presented “severe problems to [the] investigation of the fire scene.”
¶ 15. However, Claxton stated that “neither the ... vending machine, nor its power cord,” had caused the fire that damaged Perry’s building. Claxton swore that Perry had immediately misdirected its focus on the vending machine. Claxton reported that Perry had inadequately considered the possibility that the fire had begun in the area of the office. Claxton noted that “the office area sustained not only low burn but also deeper char than the area by the ... vending machine.” Claxton also swore that the fire could not have been caused by arcing in the power-supply cord. According to Claxton, “[ujnless there was a breaker failure, an internal arc between the conductors of the cord should have been limited by the breaker and contained by the outer jacket of the cord.” Claxton added that “[t]he pictures shown of the arcing on th[e] cord are more typical of arcing through char th[a]n by contact arcing of the conductors.” In other words, Claxton opined that the fire damaged the insulation on the power cord, which resulted in electrical arcing. Claxton’s conclusion was essentially the opposite of Dr. Lipscomb’s conclusion. That is, Dr. Lipscomb found that electrical arcing caused the fire, but Claxton found that the fire caused the electrical arcing. Claxton’s ultimate conclusion was that “neither the ... vending machine nor the power cord connected to it had anything to do with the cause of th[e] fire.” Instead, Claxton stated that “the fire originated in the office area where so much fire damage had occurred.”
¶ 16. In May 2012, CCBCC filed a motion for summary judgment. CCBCC argued that there were no genuine issues of material fact to suggest that it was liable for the damage to Perry’s building. To support its motion for summary judgment, CCBCC relied on the following documents: (1) Sanchez’s affidavit, (2) Thompson’s affidavit, (3) Claxton’s affidavit, and (4) Perry’s responses to CCBCC’s requests for admissions.[4]
¶ 17. Dirt Cheap filed its own motion for summary judgment during July 2012. Like CCBCC, Dirt Cheap argued that there were no genuine issues of material fact to suggest that it was liable for the damage to Perry’s building. Dirt Cheap supported its motion for summary judgment with the following documents: (1) Perry’s complaint, (2) the lease agreement between Perry and Dirt Cheap, (3) CCBCC’s responses to Perry’s interrogatories, (4) Sanchez’s affidavit, (5) Dirt Cheap’s answers to Perry’s interrogatories, (6) Perry’s responses to Dirt Cheap’s interrogatories, and (7) Dirt Cheap’s answer.
¶ 18. Perry responded and argued that neither motion for summary judgment had merit based on the presence of genuine issues of material fact. To support its position, Perry relied on: (1) Lipscomb’s unsworn report; (2) Jones’s unsworn report; (3) Officer Smith’s affidavit; (4) the State Fire Marshall’s report; (5) the lease agreement between Dirt Cheap and Perry; and (6) the unsworn incident report from the Richton Volunteer Fire Department.
¶ 19. The hearing on Dirt Cheap’s and CCBCC’s motions for summary judgment *894 was scheduled for July 23, 2012. In its appellate brief, Dirt Cheap states that approximately five days before the hearing, a staff attorney for the circuit court contacted the lawyers for the parties and announced that the circuit court intended to rule on the motions without conducting a hearing. According to Dirt Cheap,- the staff attorney also announced that the parties should submit any matters regarding the motions for summary judgment in writing. The record does not contain anything to support Dirt Cheap’s recitation of those events. However, neither Perry nor CCBCC disputes Dirt Cheap’s recollection.
¶ 20. In any event, Dirt Cheap moved to strike the unsworn reports by Dr. Lipscomb, Jones, Claxton, the State Fire Marshall, and the Richton Volunteer Fire Department. According to Dirt Cheap, those reports were not admissible because they were not sworn reports and they were not accompanied by sworn affidavits from the authors of the reports. CCBCC filed a similar motion to strike, except CCBCC did not move to strike Claxton’s unsworn reports.
¶ 21. Perry then supplemented its response to Dirt Cheap’s and CCBCC’s motions for summary judgment by filing affidavits executed by Jones and Jerry D. McCullough, P.E. McCullough’s affidavit said that Dr. Lipscomb had died, but McCullough had reviewed Dr. Lipscomb’s report. According to McCullough’s affidavit, he agreed with Dr. Lipscomb’s conclusion that the fire had been caused by the vending machine’s damaged power cord.
¶ 22. Subsequently, Dirt Cheap moved to strike McCullough’s affidavit because it was not based on his own personal knowledge. Instead, McCullough’s affidavit was based entirely on Dr. Lipscomb’s report. Dirt Cheap argued that McCullough should not be permitted to act as a “conduit expert” to present the testimony of Dr. Lipscomb, who was unavailable to testify. Perry filed a supplemental affidavit from McCullough. Dirt Cheap and CCBCC then filed a joint motion to strike McCullough’s supplemental affidavit.
¶ 23. On September 26, 2012, the circuit court granted Dirt Cheap and CCBCC’s motions for summary judgment. The circuit court did not conduct hearings on the motions. The circuit court simply stated that Perry “cannot withstand [sjummary [jjudgment” and “there is no genuine issue as to any material fact in this matter.”
¶ 24. The circuit court did not dispose of Dirt Cheap’s or CCBCC’s motions to strike Jones’s and McCullough’s affidavits before it granted summary judgment. Likewise, the circuit court did not dispose of Dirt Cheap and CCBCC’s joint motion to strike McCullough’s supplemental affidavit. However, in the circuit court’s separate but practically identical final judgments, the circuit court held that “any and all pending motions related to the [sjum-mary [jjudgment granted in favor of [Dirt Cheap and CCBCC] are now moot.” Perry appeals.
STANDARD OF REVIEW
¶ 25. An appellate court conducts a de novo review of a circuit court’s decision to grant a motion for summary judgment. Kilhullen v. Kansas City S. Ry., 8 So.3d 168, 174 (¶ 14) (Miss.2009). Mississippi Rule of Civil Procedure 56(c) provides that summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We must review the evidence in the light most favorable to the non-moving party. Kilhullen, 8 So.3d at 174 (¶ 14).
*895 ¶ 26. To overcome a motion for summary judgment, the non-moving party “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing there is a genuine issue for trial.” M.R.C.P. 56(e). The Mississippi Supreme Court has recently held:
[I]n a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.
Karpinsky v. Am. Nat’l Ins. Co., 109 So.3d 84, 88-89 (¶ 11) (Miss.2013) (quotations omitted).
ANALYSIS
I. CHALLENGES TO PERRY’S EXPERTS
¶ 27. Perry claims that the circuit court should have resolved Dirt Cheap’s and CCBCC’s motions to strike before it granted their motions for summary judgment. It is unclear why Perry advances this issue, because the circuit court’s failure to rule on the motions to strike arguably enured to Perry’s benefit. Perry did not attempt to secure a ruling on the motions to strike, but it. was not Perry’s obligation to do so. “It is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of same.” Anderson v. McRae’s Inc., 931 So.2d 674, 678 (¶ 10) (Miss.Ct.App.2006). The circuit court held that “any and all pending motions related to the [s]ummary [j]udgment granted in favor of’ Dirt Cheap and CCBCC were moot. Naturally, Perry- does not claim that the circuit court should have granted Dirt Cheap’s and CCBCC’s motions to strike. And neither Dirt Cheap nor CCBCC has cross-appealed and claimed that the circuit court erred when it did not rule on their motions to strike. It follows that this issue is moot.
II. SUMMARY JUDGMENT
¶ 28. Next, Perry claims the circuit court erred when it granted Dirt Cheap’s and CCBCC’s motions for summary judgment based on the presence of genuine issues of material fact. Perry claimed that it was entitled to recover from Dirt Cheap and CCBCC based on negligence. “To prevail on a negligence claim, a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation[,] and injury.” Paz v. Brush Eng’d Materials Inc., 949 So.2d 1, 3 (¶ 5) (Miss.2007): Unfortunately, the circuit court neglected to elaborate regarding whether there was no genuine issue of material fact related to any particular element of negligence. Although such an analysis would be helpful, it is not necessary given the de novo standard of review that applies to motions for summary judgment. We address Dirt Cheap and CCBCC separately.

A. Dirt Cheap

¶ 29. Dirt Cheap denied that it owed Perry a duty with respect to the *896 vending machine. Additionally, Dirt Cheap argued that even if it owed Perry a duty regarding the vending machine, it had not violated that duty. Dirt Cheap’s lease included the obligation to “use and occupy the premises in a careful, safe[,] and proper manner, and ... keep the premises in a clean and safe condition in accordance with local ordinances and the lawful directions of proper public officials.” Dirt Cheap was also obligated to “use and maintain the premises consistent with present reasonable standards of good shopping center operations.”
¶ 30. Dr. Lipscomb and McCullough opined that the fire had started because the vending machine’s power cord had been damaged at some unknown time, and that damage had resulted in an electrical arc. Claxton disputed that theory. In his opinion, the electrical arc happened because the fire, which started in the office, had melted the insulation that separated the positive and negative wires in the power cord. Clearly, the experts dispute the cause of the fire. But no expert opinfed that Dirt Cheap breached any duty that was included in its lease. There is no evidence that the power cord was placed in a manner that could result in it being crushed. There is no evidence that the power cord was actually crushed. Similarly, there is no evidence that Dirt Cheap had notice that the power cord was damaged and ignored it. Simply stated, there is no evidence that Dirt Cheap breached any of its duties to Perry. Accordingly, we find that the circuit court correctly granted Dirt Cheap’s motion for summary judgment.

B. CCBCC

¶ 31. In its response to CCBCC’s motion for summary judgment, Perry said that CCBCC admitted that it owed Perry a duty of care related to the vending machine. We have been unable to verify Perry’s statement. In any event, Perry’s appellate brief does not include any citation to authority regarding the duty that CCBCC owed Perry. Perry was obligated to establish the applicable standard of care. McIntosh v. Victoria Corp., 877 So.2d 519, 523 (¶ 10) (Miss.Ct.App.2004). “Duty and breach of duty are essential to finding negligence and must be demonstrated first.” Id. Perry neglected to establish CCBCC’s duty.
¶ 32. For the sake of the discussion, we note that “[t]he standard of care in cases of alleged negligent conduct is whether the party charged with the negligent conduct acted as a reasonable and prudent person would under like circumstances.” Id. at (¶ 11). Perry neglected to present evidence that CCBCC breached that duty. As discussed above, there are conflicting reports from experts regarding the cause of the fire, but there is no evidence that CCBCC breached its duty of care. There is no evidence that CCBCC had notice that the vending machine’s power cord was damaged. And there is no evidence that CCBCC ignored a damaged power cord. Sanchez’s affidavit indicates that he inspected the machine days before the fire, and neither the machine nor its power cord was damaged. Even assuming all inferences from the evidence in Perry’s favor, we cannot construe the absence of evidence of breach in a manner that creates a genuine issue of material fact that would defeat CCBCC’s motion for summary judgment. As a result, we find that the circuit court was correct when it granted CCBCC’s motion. There is no merit to this issue.
III. RES IPSA LOQUITUR
¶ 33. Finally, Perry claims that summary judgment for Dirt Cheap and CCBCC was inappropriate based on res *897 ipsa loquitur. “Under the doctrine of res ipsa loquitur, negligence can be inferred in certain factual situations.” Powell v. Methodist Health Care-Jackson Hosps., 876 So.2d 347, 349 (¶ 7) (Miss.2004) (citation omitted). The supreme court “has held that this doctrine should be cautiously applied.” Id. The supreme court has further stated:
[T]he real question, generally, is whether or not in the process of the operation any extraordinary incident or unusual event, outside of the routine of the action of its performance, occurred, and beyond the regular scope of its customary professional activity in such operations, which, if unexplained, would themselves reasonably speak to the average man as the negligent cause or causes of the untoward consequence.
Id. Furthermore, “[r]es ipsa loquitur may be applied only when three elements are present.” Id. “First, the defendant must have control and management of the instrumentality causing the plaintiffs inju-. ry.” Id. Second, “the injury must be such that in the ordinary course of things it would not occur if those in control of the instrumentality used proper care.” Id. And third, “res ipsa loquitur only applies where the injury is not a result of the plaintiffs voluntary act.” Id.
¶ 34. We find that the doctrine of res ipsa loquitur does not apply in the present circumstances. “The ‘occurrence’ in this case was a fire, and a fire could happen regardless of whether [a defendant] had used proper care. This is simply not an event which in the ordinary course of things would not happen.” Redhead v. Entergy Miss. Inc., 828 So.2d 801, 814 (¶ 44) (Miss.Ct.App.2001). It follows that there is no merit to this issue.
¶ 35. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. CCBCC Operations LLC and CCBCC Inc. are separate entities. However, for purposes of this opinion, they are referred to in the singular, as there is no need to distinguish between them.

. Royal Vending is the company that manufactured the vending machine. Initially, Royal Vending answered and denied liability. Sometime later, Perry and Royal Vending settled for an undisclosed amount. In November 2011, the circuit court entered an agreed judgment dismissing Royal Vending with prejudice.

. At some unspecified time, Perry had the machine sealed in plastic and placed in a storage unit.

. In Perry’s responses to CCBCC’s requests for admission, Perry admitted that it did not provide CCBCC with notice of the fire for more than one year after it occurred. Perry also admitted that the “heaviest bum patterns at. the premises ... were in the office area.”