# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60638

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2019

Lyle W. Cayce
Clerk

DENISE TREPAGNIER,

      Plaintiff - Appellant

v.

ALIMAK HEK, INCORPORATED; ALIMAK HEK RENTAL GROUP, L.L.C.,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-615

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:[*]

Denise Trepagnier filed a negligence lawsuit against Alimak Hek, Inc. ("Alimak Hek") and Alimak Hek Rental Group, LLC ("Alimak Hek Rental") (collectively, "Alimak Hek Defendants"). She alleges that while she was operating an elevator/hoist, the rear door came crashing down on her head and face causing serious and debilitating injuries. The Alimak Hek Defendants

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60638

filed a motion for summary judgment, which the district court granted. Trepagnier timely appeals. We AFFIRM.

I.

Trepagnier, as an employee of Performance Contractors, Inc. ("PCI"), was assigned to work as a hoist operator at the Kemper County Power Plant ("Kemper Plant"), which was then under construction. The Kemper Plant is owned and operated by Mississippi Power Company ("Mississippi Power"). Trepagnier alleges she had made multiple complaints regarding the elevator/hoist she was assigned to operate. According to Trepagnier, the rear door of the elevator/hoist would "free fall" and had to be lifted and held in place by hand to permit occupants to safely enter and exit. Trepagnier alleges that despite her complaints, on September 3, 2013, while she was operating the elevator/hoist, the rear door came crashing down on her head. She had a helmet and safety glasses on when the door allegedly fell on her head.

In 2016, Trepagnier filed a negligence lawsuit against Mississippi Power and Alimak Hek, the manufacturer of the allegedly defective elevator/hoist. Trepagnier later amended her complaint to include Alimak Hek Rental and Northwest Florida Leasing Co., Inc. ("Northwest") as additional defendants.[1] Trepagnier's theories of negligence against the Alimak Hek Defendants include the following claims: failure to provide and maintain reasonably safe equipment; allowing the continued use of damaged equipment; failing to properly maintain the elevator/hoist; failing to abide by applicable safety regulations; and failing "to cure, correct, alleviate, remove, and/or repair timely [the] hazardous and unsafe . . . condition of the Elevator."

---

[1] Trepagnier's claims against Northwest and Mississippi Power were subsequently dismissed in December 2017 and May 2018 respectively.

No. 18-60638

The Alimak Hek Defendants filed a motion for summary judgment on the following grounds: (1) Trepagnier cannot prove the element of duty in her negligence claim because she has not shown she was operating Alimak Hek Rental's elevator/hoist at the time of the incident; (2) Trepagnier cannot establish that the Alimak Hek Defendants' conduct caused her injuries because she never designated a liability expert; (3) Trepagnier cannot prove the Alimak Hek Defendants were on notice of any alleged issue with the elevator/hoist door; and (4) Trepagnier assumed the risk when she did not confirm that the alleged issue with the door was resolved before resuming operation of Alimak Hek Rental's elevator/hoist. In response to summary judgment, Trepagnier, for the first time, raised the doctrine of *res ipsa loquitur*, arguing that it relieved her of any obligation to have a liability expert.

On September 12, 2018, the district court granted the Alimak Hek Defendants' motion for summary judgment. It found two grounds dispositive: (1) the nature of this case required Trepagnier to offer expert testimony to prove liability, and her failure to designate an expert precluded her from offering the evidence necessary to avoid summary judgment; and (2) the doctrine of *res ipsa loquitur* was inapplicable because the Alimak Hek Defendants did not have "exclusive control" over the elevator/hoist. Trepagnier appealed and on appeal she argues that an expert is not required given the simple nature of the elevator/hoist and the sufficient evidence of negligence she presented. She also asserts that the Alimak Hek defendants were negligent under the doctrine of *res ipsa loquitur* in part because of their exclusive control of the elevator/hoist at the time of the negligent act.

II.

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate

No. 18-60638

where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue [of] material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(a)). "The evidence of the non[]movant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). However, "[evidence] that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial[.]" *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citation omitted).

Under Mississippi law, to prevail on a claim of negligence, "a plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 922 (Miss. 2006) (citation omitted). The plaintiff must show "a causal connection between the breach and the [injury], such that the breach is the proximate cause of the [injury]." *Double Quick, Inc. v. Lymas*, 50 So. 3d 292, 298 (Miss. 2010) (en banc) (citation omitted). In some cases, an expert may be needed to establish breach of duty and causation. The general rule under Mississippi law is that "expert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to a jury." *Wal-Mart Stores, Inc. v. Johnson*, 807 So. 2d 382, 388 (2001) (citing *Hammond v. Grissom*, 470 So. 2d 1049, 1052 (Miss. 1985)).

Trepagnier refutes the need for an expert to establish the necessary elements of her negligence claim because: (1) the working of an elevator door is simple; (2) expert inspection of the door was impossible because it had been disassembled, moved, and repaired by Alimak Hek Rental multiple times before the lawsuit was filed; and (3) she has provided sufficient evidence to

support her negligence claim. The district court determined that the operation of this elevator/hoist door is not "simple":

> Although Trepagnier refers to the Alimak Hek equipment as being an "elevator," the subject equipment is actually a "construction hoist," which does not appear to operate in the same manner as elevators that are found in residential/office buildings. . . . Trepagnier alleges that the elevator/hoist was damaged and/or negligently maintained by the Alimak Hek Defendants . . . . [However,] Trepagnier has not retained any expert witness to offer testimony on the issues of what defect/damage allegedly existed in the hoist door that caused it to malfunction in the manner she alleges, and/or proximately caused the injuries about which [she] complains.

As the district court aptly noted, "while it may be true that most people have ridden in an elevator at some point in their lives, very few will have operated or ridden in a construction hoist such as the one Trepagnier was operating at the time she was allegedly injured." In fact, Trepagnier admits the mechanics of Alimak Hek Rental's elevator/hoist door were beyond even her knowledge as a construction hoist operator:

> Q. Do you have any knowledge about what could have caused the rear door to drift and free fall?
> A. No. I only assume it was wear and tear.
>
> * * *
>
> Q. What part of it was wearing and tearing?
> A. Either the—if it was a hydraulic, the hydraulic system needed to be serviced. If it was ball bearings, maybe the ball bearings were wearing. If it was a cable issue, maybe that was wearing thin. I don't know. I don't know the exact method of—or the mechanics of this elevator. I can't answer that.
> Q. So you don't have any knowledge of what could have actually been wrong with the door if, in fact, it was doing what you are testifying it did.
> A. Exactly.

Notably, when asked if Trepagnier had "any evidence that there is something that either of these Alimak entities did to cause the door to drift and free fall," she answered "no." We agree with the Alimak Hek Defendants' assertion that the district court correctly concluded that the mechanics and science behind the elevator/hoist door (and its repair and maintenance) are not within the common knowledge and experience of laypersons. *But cf. Johnson*, 807 So. 2d at 388 (holding that the fact that the plaintiff's car only had significant issues after Wal-Mart worked on it was sufficiently within the jury's ability to ascertain whether Wal-Mart's actions or omissions caused those issues).

The Alimak Hek Defendants proffered an expert report opining that the door could not have free fallen on Trepagnier in the manner she alleges. However, Trepagnier did not provide any expert evidence to rebut this report, and as will be explained below, failed to provide any other admissible evidence which establishes a material question of fact regarding how the Alimak Hek Defendants' conduct caused her injuries. Therefore, we must affirm the district court's summary judgment in favor of the Alimak Hek Defendants. *See Rudd v. Montgomery Elevator Co.*, 618 So. 2d 68, 69 (Miss. 1993) (en banc) (affirming the trial court's JNOV judgment against the plaintiff for his failure to provide any credible evidence of causation which included the plaintiff's expert's testimony that the court found was speculative); *Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 835 (Miss. 2008) (affirming granting of summary judgment in favor of the defendant in a case in which the plaintiff presented no evidence of causation).

Trepagnier only offers two pieces of evidence to establish that the Alimak Hek Defendant's negligence caused her injuries: (1) a post-incident inspection that concluded improper maintenance was a possible cause of the incident and (2) the fact that Alimak Hek Rental performed service on the elevator/hoist three days post-incident. Yet, both pieces of evidence are inadmissible.

No. 18-60638

The PCI incident report is not admissible evidence because it contains inadmissible hearsay without an exception. The report contains unsworn statements by employees of PCI or Trepagnier, offered by Trepagnier to prove the truth of the matter asserted therein, *i.e.*, that improper maintenance caused the incident. *See* Fed. R. Evid. 801(c).[2] Additionally, the Alimak Hek Defendants submitted an unchallenged, sworn affidavit of PCI site-safety manager Patrick Nolan, who was a part of the investigating team, stating that the "inspection revealed that there were no problems with either door of the subject elevator."

Trepagnier's reliance on Alimak Hek Rental's post-incident service to the elevator/hoist also cannot be used to defeat summary judgment because it is evidence of an inadmissible subsequent remedial measure. *See* Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence [or] culpable conduct[.]"). Trepagnier asserts in her initial brief that because Alimak added weight to the counterweights on the door, this constitutes evidence of Alimak's negligence. Alimak rebutted the admissibility of this subsequent remedial measure, but in reply, Trepagnier asserted that the evidence is admissible to impeach and to establish the feasibility of precautionary measures. However, regardless of the exceptions to

---

[2] Trepagnier does not assert that the incident report falls into any hearsay exception, but instead asserts that because the Alimak Hek Defendants first introduced this report, they cannot question its admissibility. However, she does not offer any caselaw for her argument and moreover, the Alimak Hek Defendants did not utilize it to establish that they were not negligent. We note that this report does not comply with the business records exception to hearsay under Federal Rule of Evidence 803(6). Under Rule 803(6) for a recorded recollection to be admissible, it must be certified pursuant to Rule 902(11) or 902(12), or by testimony of the records custodian or another qualified witness. *See United States v. Baker*, 538 F.3d 324, 331 (5th Cir. 2008) (holding that the government's exhibit was inadmissible because it was not authenticated (certified), which is a predicate for admission under Rule 803(6)).

Rule 407, she still seeks to use this evidence to prove Alimak's negligence and that is prohibited under Rule 407. *See Rutledge v. Harley-Davidson Motor Co.*, 364 F. App'x 103, 106 (5th Cir. 2010) (holding that although the plaintiff asserted other purposes for introducing evidence of subsequent remedial measures to prove a design defect in the product, because the evidence was her only competent summary judgment evidence, the other purposes did not except the evidence from Rule 407) (per curiam) (unpublished opinion).[3]

Consequently, Trepagnier has not provided sufficient evidence to support her negligence claim. *See* Fed. R. Civ. P. 56(c)(1)(B) (requiring admissible evidence to support assertion of genuine dispute of fact); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) ("It has long been settled law that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence." (citing *Adickes,* 398 U.S. at 159 n.19)).

Trepagnier also argues that as the owner and party responsible for erecting, inspecting and maintaining the elevator/hoist, the Alimak Hek Defendants were in exclusive control of the elevator/hoist and door as contemplated by the doctrine of *res ipsa loquitur*. Generally, *res ipsa loquitur* "is a rule of evidence that allows negligence to be inferred in certain fact situations." *Winters v. Wright*, 869 So. 2d 357, 363 (Miss. 2003) (en banc). Mississippi courts have instructed that *res ipsa loquitur* should be applied "cautiously." *Perry Inv. Grp., LLC v. CCBCC Operations, LLC*, 169 So. 3d 888, 897 (Miss. Ct. App. 2014) (citation omitted). Moreover, and as the Mississippi Supreme Court has repeatedly stated, the doctrine "has no operation to excuse or dispense with definite proof, by the plaintiff, of material facts which are

---

[3] Trepagnier also makes the alternative argument that the addition of weight to the counterweights does not constitute a subsequent remedial measure because it was not a part of the standard repair for the doors. However, we reject this argument. Adding weight to the doors falls squarely within Rule 407's definition of a subsequent remedial measure.

tangible and are capable of direct and specific evidence, as much within the power of plaintiff to produce as of the defendant." *Winters*, 869 So. 2d at 364 (quoting *Yazoo & M.V.R. Co. v. Skaggs*, 179 So. 274, 277 (Miss. 1938)). For the doctrine to apply, a plaintiff must prove three elements:

> 1) the instrumentality causing the damage must be under the exclusive control of the defendant; 2) the occurrence must be [of such a nature that it would not happen] in the ordinary course of things . . . if those in control of the instrumentality used proper care; and 3) the occurrence must not be due to any voluntary act on the part of the plaintiff.

*Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997) (en banc).  Additionally, expert testimony may be necessary if an ordinary layman would not understand "the negligence as a matter of common sense and practical experience." *Id.* (citation omitted).

The district court ended its analysis with the first element and correctly noted that "there is no evidence [] that either of the Alimak Hek Defendants had exclusive control of the subject elevator/hoist at the time of the alleged incident." Trepagnier is correct that the Alimak Hek Defendants must only have exclusive control at the time of the "negligent act which gives rise to the injury and not necessarily at the time of the accident to the plaintiff." *Johnson v. Coca-Cola Bottling Co.*, 125 So. 2d 537, 539 (Miss. 1960).[4] But here, the record shows that the elevator/hoist had been leased from Alimak Hek Rental by Trepagnier's employer, PCI, in January of 2013. Under Mississippi law, "[a] lease in law is a conveyance or transfer of leased property and no right of

---

[4] "For instance, in cases of falling objects from a building or vehicles running wild and other similar situations, the requirement of exclusive control is satisfied where the defendant is shown to be in such control of the building from which the falling object came, or in control of the vehicle at the time it was negligently allowed to begin running wild, and not at the time a plaintiff was struck thereby." *Johnson*, 125 So. 2d at 539.

possession or use remains in the lessor except thos[e] reserved by suitable language." *Standard Fruit & S. S. Co. v. Putnam*, 290 So. 2d 612, 615 (Miss. 1974). Alimak Hek Rental did not reserve any right to possession or use of the elevator/hoist and was not responsible for its maintenance. Thus, the Alimak Hek Defendants did not have exclusive control of the elevator/hoist.

The rental agreement between Alimak Hek Rental and PCI identifies Alimak Hek Rental as the lessor and PCI as the lessee of the elevator/hoist, and it makes clear that the elevator/hoist is the lessee's (PCI's) responsibility during the rental period. For example, as to testing, inspections, and permits, "[l]ocal permits and inspection costs are the responsibility of Lessee [PCI]," and "Lessee [PCI] is to provide certified test weights for all required load tests/drop tests" and any "lifting equipment" necessary for the testing. It also required PCI as lessee to provide grounding rods, connecting wires, a concrete slab, a base platform loading dock with roof structure, stairs or a ramp for access to the elevator/hoist, gate installation at each landing with wing walls, welding materials and personnel if necessary, a beacon light above the hoist tower, and other such requirements necessary for the elevator/hoist's installation and operation. Significantly, the agreement made clear that Alimak Hek Rental would provide technical service and maintenance on an as-needed basis, with the caveat that Alimak Hek Rental also required one of its technicians to be present during the erection and dismantling of the elevator/hoist. This is also spelled out in the payment terms section: "Monthly rent and maintenance charges (if applicable) will be invoiced in advance."

In *Lollar v. East Mississippi Oil Co.*, the plaintiff sued a service station lessor, East Mississippi Oil Company ("East Mississippi"), and lessee, J.E. Walker, after the plaintiff's automobile fell off of a grease rack during service. 106 So. 2d 65, 65 (Miss. 1958). As part of the lease agreement, East Mississippi agreed to keep the grease rack in repair. *Id.* The plaintiff's automobile fell

when Walker put the vehicle on the rack incorrectly, but the evidence showed that the grease rack was also in disrepair, and the vehicle "would not have fallen if the grease rack had not vibrated." *Id.* On appeal from a jury verdict in favor of East Mississippi, the plaintiff argued *res ipsa loquitur* should have applied. *Id.* at 66. The Mississippi Supreme Court found there was "no merit to this contention" because East Mississippi "neither had control of the apparatus nor the operation thereof," despite having agreed to keep the grease rack in repair per the terms of the lease agreement. *Id.*

Likewise, in this case, because the Alimak Hek Defendants were not in exclusive control of the elevator/hoist or its maintenance, the district court correctly found *res ipsa loquitur* inapplicable. In sum, because Trepagnier fails to present credible admissible evidence establishing a question of fact regarding the Alimak Hek Defendants' negligence, and because *res ipsa loquitur* is inapplicable, the Alimak Hek Defendants correctly received summary judgment.

## III.

The district court's judgment is AFFIRMED.