# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00669-COA

**CONNIE GOOD AND DONALD GOOD**                    **APPELLANTS**

**v.**

**PATTI SANDERS**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2023 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | AISHA ARLENE SANDERS |
| | EVERETT T. SANDERS |
| ATTORNEYS FOR APPELLEE: | MALLORY MILLER STREET |
| | CORY LOUIS RADICIONI |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Brittany Good suffered fatal injuries after being struck by a vehicle driven by Patti Sanders. Good's family members filed a wrongful death complaint, alleging Sanders had been negligent in operating her vehicle. Sanders filed a motion for summary judgment. Before the court ruled on that motion, the Goods filed a motion for the sitting judge's recusal, citing "a certain antagonism" she allegedly harbored for the Goods' counsel. The motion was denied; the judge later granted summary judgment in favor of Sanders. The Goods now appeal, asserting that summary judgment was granted in error because there were genuine issues of material fact and that the circuit judge should have recused herself sua sponte. Finding no error, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2. On June 15, 2017, at approximately 4:07 p.m., Brittany Good arrived at the Merit Health Natchez Emergency Department. Good complained of a headache, body aches, and a fluttering heart. She additionally indicated she had used cocaine the previous night and marijuana earlier in the day. Good was discharged from the emergency department at approximately 9:28 p.m. At approximately 9:49 p.m., authorities were alerted to an accident involving a vehicle striking a pedestrian on Sgt. Prentiss Drive in Natchez, Mississippi. The vehicle was a Toyota Sequoia driven by Patti Sanders; the struck pedestrian was Good. Good was transported to Merit Health before being air-evacuated to the University of Mississippi Medical Center. The following day at approximately 4:24 p.m., Good was pronounced dead. An autopsy indicated blunt force injuries as the cause of her death. In addition, Good had cocaine and marijuana in her system.

¶3. On October 5, 2018, Connie and Donald Good brought a wrongful death action against Sanders in the Adams County Circuit Court, alleging negligence and intentional infliction of emotional distress and requesting damages. The Goods alleged that Sanders's negligence "was the direct proximate or contributing cause of the death of the deceased Brittany Good." On October 15, 2018, Sanders filed an answer to the complaint, asserting negligence on Brittany Good's part. On November 28, 2018, the parties entered into an agreed protective order regarding the parties' financial information.

¶4. On November 12, 2019, Sanders filed a motion for summary judgment. In sum, the

2

motion alleged the Goods had presented no evidence demonstrating Sanders's negligence and were "unable to prove the essential elements of breach and proximate cause." Included as exhibits were copies of the complaint, police records, autopsy report, and Good's medical records. On March 20, 2020, the Goods filed a response to the motion for summary judgment as well as a motion to compel discovery or, in the alternative, a continuance.

¶5. On May 7, 2020, the Goods filed a motion requesting leave of court to file an amended complaint.[1] That same day, the Goods filed an affidavit in support of their motion to compel Sanders's deposition. On May 11, 2020, the Goods filed a motion for a continuance. On May 19, 2020, Sanders filed a motion for a protective order prohibiting her own deposition until a hearing was held and the court considered the motion for summary judgment.

¶6. On June 11, 2020, the court entered an order granting the Goods' motion for a continuance and Sanders's motion to stay discovery. About six months later, on February 12, 2021, Sanders renewed her original motion for summary judgment. On April 8, 2021, the Goods filed a supplemental response to the motion for summary judgment or, in the alternative, an enforcement of the court's order to compel discovery.

---

[1] The proposed amended complaint was attached as an exhibit to the motion and named Sanders individually as the defendant and added Sanders "as a representative of Re/Max Elite Realty and Elite Realty of Natchez." The complaint alleged Sanders "was acting in an official capacity as an employee of defendant REMAX at the time of the accident" and "was in the course of doing business and dropping off paperwork when the accident occurred." The record contains no order granting or denying this motion; it appears the defendant remained Sanders, individually.

3

¶7.    Also on April 8, 2021, the Goods filed a motion for Judge Debra Blackwell's recusal. The motion asserted that Judge Blackwell "expressed a certain antagonism" and "personal bias and prejudice" toward the Goods' counsel, Aisha Sanders.[2] The conflict allegedly began when Judge Lillie Sanders (Aisha's mother) entered an order increasing the salaries of the county's public defenders. Aisha was a county public defender; however, due to her direct relation to Judge Sanders, she was not permitted to practice in front of her.[3] Accordingly, she was not included in the group of public defenders who received an increase in pay.

¶8.    The motion for recusal included multiple news articles concerning Aisha, counsel for the Goods, as exhibits. The first was an article from the *Natchez Democrat* dated February 20, 2020. According to the article, Judge Blackwell "was never in favor of giving pay raises to any of the public defenders and refused to sign the court order" doing so. Judge Blackwell was alleged to have said that Aisha did not receive a raise because her practice in the county was "limited." Aisha asserted to the Adams County Board of Supervisors that the "salary discrepancy appeared to be discriminatory against the only two public defenders who are both female and black."

¶9.    The second article was dated December 7, 2020, and stated the establishment of a

---

[2] "Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law[.]" Miss. Code Jud. Conduct Canon 3(E)(1).

[3] The other public defender undergoing the same issue was Roberta Blackmon, Judge Lillie Sanders's sister.

public defenders' office for the county was "in limbo" and awaiting final approval from the Board of Supervisors. The article only mentioned Aisha's relation to her mother and contained no quotes from Judge Blackwell.

¶10. On March 1, 2021, the *Natchez Democrat* published another article detailing Judge Blackwell's decision to not allow Aisha to serve in her courtroom. The article alleged direct quotes to Judge Blackwell, such as, "[S]he would not let Judge Lillie Sanders force who she should pick to serve in her courtroom" and would instead be appointing the attorneys who she thought "were the most qualified." Judge Blackwell also stated she had tried to work with Aisha in the past. The motion further included four orders from different criminal cases substituting counsel in Aisha's place, all dated March 4, 2021.

¶11. On May 12, 2021, the court entered a written order denying the Goods' motion for recusal. The order explained that Judge Blackwell had not treated Aisha any differently than the other public defenders because she "did not agree to nor sign an order increasing the pay for any of the public defenders." Further, Judge Blackwell found the matter moot because both she and Judge Sanders signed an order setting the same hourly rate for the public defenders and later amended it to increase the rate. The order continued to explain that the Board of Supervisors agreed with both judges that each "would select three attorneys to serve as public defenders" in their respective courtrooms. Additionally, Judge Blackwell stated that she "did not give a statement to the local newspaper on this matter" and that, rather, the statements appearing in the articles were made at the Board of Supervisors meeting. Finally,

5

the motion for recusal "was not filed in accordance with the requirements of Rule 1.15 of the Uniform Rules of Circuit and County Court." Specifically, an affidavit was not attached to the motion, and the motion was not timely filed.[4]

¶12. On July 22, 2021, Sanders filed a motion for a discovery conference. On August 31, 2021, Sanders noticed a hearing for that motion for October 11, 2021, and the court entered a scheduling order following the discovery conference, ordering that the Goods produce Sanders's deposition date by October 18 by 5:00 p.m. On November 2, 2021, the Goods filed a notice of deposition for Sanders on November 12, 2021, and requested production of specific documents such as Sanders's insurance policy and employment agreement with RE/MAX. Accordingly, Sanders's deposition was taken on that specified date.

¶13. On November 2, 2022, Sanders renewed her motion for summary judgment. On December 5, 2022, Sanders noticed a hearing regarding her motion for February 27, 2023. The hearing took place, and the judge heard arguments from both sides. In sum, counsel for Sanders stated that the police report showed that Good was wearing "dark clothing" and walked in front of Sanders's vehicle, Sanders did not appear to be under the influence or speeding, and the incident was "ultimately classified . . . as accidental." The judge noted in

---

[4] Rule 1.15 of the Uniform Rules of Circuit and County Court Practice requires a motion for recusal of a judge to be filed within thirty days of "notification to the parties of the name of the judge assigned to the case" or if it is based upon new information "which could not reasonably have been known to the filing party within such time . . . 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." URCCC 1.15.

6

her questioning that Good was also found to be under the influence of cocaine and marijuana. In response, counsel for the Goods stated that Sanders had been driving in the left lane at the time of the accident and should have been using the right lane "unless [she was] passing." The Goods asserted that "whether or not Ms. Sanders was negligent in failing to keep a proper lookout" was an issue of fact for the jury to decide.

¶14. Following the hearing, the court found no genuine issue of material fact, entitling Sanders to summary judgment as a matter of law. On March 3, 2023, the court entered the order granting summary judgment in favor of Sanders. On March 13, 2023, the Goods filed a motion requesting that the court reconsider its ruling on summary judgment and for a new trial or to alter or amend the judgment. On March 24, 2023, Sanders filed a response to that motion. And on March 29, 2023, the Goods filed a response to that response. On May 9, 2023, the court denied the Goods' motion to reconsider, for a new trial, or to alter or amend the judgment.

¶15. On June 7, 2023, the Goods filed a notice of appeal. On December 7, 2023, the Goods filed a motion to correct or modify the record and suspend the briefing schedule alleging "[t]he photographs introduced in the trial court were in color and they reflect, among other things, the lighting conditions at the scene"; whereas the ones in the official record on appeal "appear[ed] to be reproduced photo copies which are black and white, indistinct and do not reflect the images reflected in color photographs." On December 13, 2023, the supreme court entered an order granting the Goods' motion to correct or modify the record with the

7

colored photographs but denied the motion to suspend the briefing schedule.

## ANALYSIS

¶16.    On appeal, the Goods argue there was a genuine issue of material fact and that Judge Blackwell should have sua sponte recused herself.

### I.    Summary Judgment

¶17.    When considering a trial court's ruling on a motion for summary judgment, this Court employs a de novo standard of review. *Burns v. BancorpSouth Bank*, 382 So. 3d 1164, 1169 (¶12) (Miss. Ct. App. 2023) (citing *Smith v. Franklin Custodian Funds Inc.*, 726 So. 2d 144, 146 (¶6) (Miss. 1998)). As the moving party, Sanders "has the burden of persuading the court that there are no genuine issues of material fact and, therefore, [she is] entitled to summary judgment as a matter of law." *Id.* (citing *Daniels v. GNB Inc.*, 629 So. 2d 595, 600 (Miss. 1993)). "If there is a doubt as to whether there exists a genuine issue of material fact, the non-movant receives the benefit of that doubt." *Id.* (citing *Mantachie Nat. Gas Dist. v. Miss. Valley Gas Co.*, 594 So. 2d 1170, 1172 (Miss. 1992)).

¶18.    "The elements of a prima facie case of negligence are duty, breach, causation, and damages." *Alonso v. Ross*, 223 So. 3d 194, 197 (¶9) (Miss. Ct. App. 2017) (quoting *Todd v. First Baptist Church of West Point*, 993 So. 2d 827, 829 (¶10) (Miss. 2008)). Of these elements, "[d]uty and breach must be established first." *Todd*, 993 So. 2d at 829 (¶10) (citing *Strantz ex rel. Minga v. Pinion,* 652 So. 2d 738, 742 (Miss. 1995)). "Upon establishing a duty was owed, the elements of breach and proximate cause must be established by the

8

plaintiff with supporting evidence." *Alonso*, 223 So. 3d at 197 (¶9). "The plaintiff bears the burden of proving each essential element by a preponderance of the evidence." *Id.* (citing *Perry Inv. Grp. LLC v. CCBCC Operations LLC*, 169 So. 3d 888, 895 (¶28) (Miss. Ct. App. 2014)). "To survive a motion for summary judgment, the plaintiff must allege facts tending to prove all four elements." *Id.* (citing *Est. of Kiihnl v. Family Dollar Stores of Miss. Inc.*, 197 So. 3d 920, 924 (¶10) (Miss. Ct. App. 2016)).

¶19.    The Court of Appeals handled a previous appeal similar in nature to the instant case in *Alonso*, where James Smith was killed after being struck by a vehicle driven by Jason Ross. *Id.* at 195 (¶1). Ross testified that at the time of the collision, it was dark and the roads were wet. *Id.* at (¶3). He further stated that "he was neither speeding, using his cell phone, nor under the influence of any substance at the time of the accident" and that he did not see Smith before striking him. *Id.* at 195-96 (¶3). It was discovered that Smith was wearing "a camouflage jacket and pants" and had a blood-alcohol concentration "of .247—over three times the legal limit for intoxication." *Id.* at 196 (¶4).

¶20.    Alonso (Smith's daughter) filed a wrongful-death complaint in the circuit court. *Id.* at (¶6). The circuit court granted Ross's motion for summary judgment, and Alonso appealed. *Id.* "Alonso's primary assertion for Ross's negligence was that she felt that because Ross was driving a vehicle that hit a pedestrian, he must have been negligent." *Id.* at (¶10). This Court acknowledged that "Alonso articulated certain duties required of Ross in the operation of his motor vehicle" but held "she failed to establish that Ross breached

9

those duties." *Id.* at (¶11) (citing *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*, 641 So. 2d 1186, 1188 (Miss. 1994)). The "uncontroverted facts" evidenced Ross "was not speeding, was not using his cell phone, and was not under the influence of any substance." *Id.* at (¶12). Additional uncontroverted facts included that "it was dark, that Smith was wearing camouflage clothing, and that Smith possessed a BAC of .247." *Id.*

¶21. The similarities between *Alonso* and the case before us today are impossible to ignore. The police reports filed for the accident showed that Sanders was not speeding. She was not using her cell phone. She was not under the influence. The police report indicated the collision was "accidental," and Sanders was not criminally charged for Good's death. The record also showed that Good was wearing dark clothing. The accident did not occur at a crosswalk. Good was also under the influence at the time of the collision. Make no mistake, the loss of life in this case is certainly a tragedy. Tragedy, however, does not necessarily correspond to fault; accidents happen. Utilizing a de novo review, this Court finds Sanders did not breach any duties as a driver and, therefore, affirms the grant of summary judgment as a matter of law.

## II. Recusal

¶22. "This Court reviews the denial of a motion to recuse under an abuse-of-discretion standard." *Queen v. State*, 325 So. 3d 656, 665 (¶37) (Miss. 2021) (citing *Thomas v. State*, 249 So. 3d 331, 343 (¶38) (Miss. 2018)). The question the Goods pose is whether Judge Blackwell should have recused herself sua sponte. Such an argument is not truly applicable

10

here, as Judge Blackwell was presented with a motion for recusal and denied it. Regardless, our standard of review remains for an abuse of discretion. *See Farris v. State*, 394 So. 3d 1028, 1030 (¶7) (Miss. Ct. App. 2024). "In determining whether a judge should have recused h[er]self, this Court uses an objective test: 'A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Torrey v. State*, 229 So. 3d 156, 162 (¶17) (Miss. Ct. App. 2017) (quoting *Shumpert v. State*, 983 So. 2d 1074, 1078 (¶14) (Miss. Ct. App. 2008)).

¶23. In *Torrey*, a criminal defendant filed a motion for the circuit judge's recusal "because he was involved in past cases related to Torrey when serving as the district attorney" of the county. *Id.* The judge denied the motion, and Torrey challenged that decision on appeal. *Id.* This Court did not reach the "objective test" as Torrey was procedurally barred from raising the issue. *Id.* at 162-63 (¶¶17-19). The implicated Uniform Rule of Circuit and County Court Practice requires:

> Any party may move for the recusal of a judge of the circuit or county court if it appears that the judge's impartiality might be questioned by a reasonable person knowing all the circumstances, or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law. A motion seeking recusal **shall be filed with an affidavit** of the party or the party's attorney setting forth the factual basis **underlying the asserted grounds for recusal** and **declaring** that the motion is **filed in good faith** and that the **affiant truly believes the facts** underlying the grounds **stated to be true**. Such motion **shall**, in the first instance, **be filed** with the judge who is the subject of the motion **within 30 days** following **notification to the parties** of **the name of the judge assigned** to the case; or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted.

11

*Id.* at (¶18) (emphasis added) (quoting URCCC 1.15).

¶24.    Upon reviewing the record, this Court found "that Torrey failed to attach an affidavit from himself or his attorney to his motion, as required by Rule 1.15," and his motion was untimely. *Id.* at (¶19). Accordingly, the argument was rejected. *Id.* In this case, the Goods failed to attach an affidavit from themselves or their counsel to the motion for recusal. A failure "to comply with Rule 1.15 . . . procedurally bar[s]" the Goods from raising this issue. *Id.* Further, the motion was untimely. The allotted time period for filing a motion for recusal is "30 days after the filing party could reasonably discover the facts underlying the grounds asserted." *Id.* at (¶18) (quoting URCCC 1.15). In the order denying recusal, Judge Blackwell stated that the conflict arose at the latest on March 1, 2021[.]" It was on that date that the Adams County Board of Supervisors meeting took place when Judge Blackwell stated she would not be appointing Aisha to a public defender position within her courtroom. The Goods did not file their motion for recusal until April 8, 2021, which is approximately seven days outside the time period for such a motion. Accordingly, we find this argument is procedurally barred.

## CONCLUSION

¶25.    In conclusion, this Court finds no genuine issue of material fact existed as to whether Sanders was negligent when the collision killing Good took place, and, thus, summary judgment was appropriate. We find the additional argument concerning the recusal of Judge Blackwell is procedurally barred for failing to comply with the Uniform Rules of Circuit and

12

County Court Practice.

¶26.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.  WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WEDDLE AND ST. PÉ, JJ.; McCARTY, J., JOINS IN PART. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  McDONALD, J., NOT PARTICPATING.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶27.  I concur with the majority that Judge Blackwell's denial of the plaintiff's motion to recuse is procedurally barred from our consideration on appeal. I write separately to discuss why recusal was absolutely warranted in this case.[5]

¶28.  Judges take an oath under our constitution to "administer justice without respect to persons" and to "impartially discharge and perform all the duties incumbent upon" the judge. Miss. Const. art. 6, § 155. The Mississippi Code of Judicial Conduct Canon 3(E) provides that:

> Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all of the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law . . . .

The standard for evaluating whether a party can overcome the presumption that a judge is impartial and unbiased is whether "a reasonable person, knowing all of the circumstances,

---

[5] The Goods do not present an argument on appeal supporting the merits of Judge Blackwell's denial of the motion to recuse. Instead, they limit their argument to the procedural bar.

13

would harbor doubts about the judge's impartiality." *Hathcock v. S. Farm Bureau Cas. Ins. Co.*, 912 So. 2d 844, 848 (¶9) (Miss. 2005). "Impartiality is viewed under the 'totality of the circumstances' analysis using an objective reasonable 'person, not a lawyer or judge,' standard." *Id.* at 848-49 (¶10) (emphasis omitted) (quoting *Dodson v. Singing River Hosp. Sys.*, 839 So. 2d 530, 534 (¶15)(Miss. 2003)).

¶29. Of the potential reasons for a judge's recusal, personal bias or prejudice is of particular weight. Unlike other grounds for disqualification, our Code of Judicial Conduct does not allow parties to waive disqualification when the reason is personal bias or prejudice:

> If . . . [the] disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be disqualified, and the judge is then willing to participate, the judge may participate in the proceeding.

Miss. Code of Jud. Conduct Canon 3(F).

¶30. Here, Judge Blackwell's history of publicly excluding the Goods' attorney from her courtroom and Judge Blackwell's publicly stated negative opinions about the attorney's capabilities demonstrate a personal bias sufficient to create reasonable doubt about the judge's impartiality toward the attorney's clients. The Adams County Board of Supervisors agreed to pay public defense attorneys per month instead of per hour. At a public board meeting, during which attorneys from an approved list were being selected, Judge Blackwell indicated that she would not allow two of the attorneys, one of whom is the Goods' attorney here, to serve as public defenders in her courtroom. She stated, "I am not appointing Ms. Blackmon or Ms. Sanders to work in my courtroom. I do not approve of them. I have tried

14

for two years to work with them . . . . One of them spends more time in my court on motions to withdraw than she does on resolutions to her cases." The Goods also assert that prior to these public statements, Judge Blackwell had limited Sanders from acting as a public defender in her courtroom by limiting her cases and delaying a pay increase that had been given to other attorneys.

¶31. The core function of a jurist is to preside with impartiality. Here, the parties involved in this case have reason to question the impartiality the judge presiding over their case in light of the judge's active efforts to exclude the attorney from practicing in her courtroom and her public remarks about the attorney's competence.

¶32. In her order denying the motion to recuse, Judge Blackwell noted that a party has a particularly heavy burden when arguing that animosity toward an attorney should be imputed as bias against a party. *See Washington Mut. Fin. Grp. LLC v. Blackmon*, 925 So. 2d 780, 787 (¶19) (Miss. 2004) (quoting *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 517 F.2d 1044 (5th Cir. 1975). If this were an easy ground for recusal, "[l]awyers, once in controversy with a judge, would have a license under which the judge would serve at their will." *Id.* Further, the "recusal process must not degenerate into a technique for a lawyer to utilize in constructing a forum favorable to the positions which may favor the litigants represented by the lawyer." *Id.* at 785 (¶12). But here, the history of animosity and personal bias revolves around the *judge's* efforts to exclude this attorney from her courtroom, not the other way around. Moreover, the judge's public remarks on her opinion of the attorney's competence

15

rises to a level warranting imputation of bias against the party.

¶33. Judge Blackwell has previously failed to recuse herself when recusal was required. *See Bell v. State*, 394 So. 3d 461, 462 (¶4) (Miss. Ct. App. 2024) (Judge Blackwell was disqualified from presiding over the revocation proceedings of a defendant she had previously prosecuted.); *White v. State*, 385 So. 3d 1266, 1267 (¶4) (Miss. Ct. App. 2024) (Judge Blackwell was disqualified from presiding over the post-conviction proceedings of a defendant she had prosecuted.). This pattern regarding recusals demonstrates a poor display of professional judgment.

¶34. Consistent with their constitutional oaths, judges have a professional responsibility to recuse themselves when appropriate under Canon 3(E). However, when a judge fails to preemptively recuse herself, the burden is on the parties to comply with the procedures for seeking recusal and preserving the issue for appeal. I agree that this issue was not properly preserved for appeal; therefore I specially concur.

**WEDDLE AND ST. PÉ, JJ., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**